**Frank RODRIGUEZ,**
**Petitioner–Appellant,**

v.

**Robert HOKE, Superintendent of the Eastern Correctional Facility,**
**Respondent–Appellee.**

**No. 906, Docket 90–2350.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 1, 1991.

Decided March 15, 1991.

Helena Pichel Solleder, New York City (of counsel), for petitioner-appellant.

Karen Swiger, Asst. Dist. Atty. (Robert T. Johnson, Dist. Atty., Peter D. Coddington, Asst. Dist. Atty., of counsel), for respondent-appellee.

Before KEARSE, PRATT, and McLAUGHLIN, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

Petitioner-appellant Frank Rodriguez appeals from a judgment entered in the United States District Court for the Southern District of New York, Louis L. Stanton, *Judge,* denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Rodriguez was convicted of murder in the second degree after a jury trial in the Supreme Court, Bronx County, New York. He was sentenced to an indeterminate term of 20 years to life. The Appellate Division affirmed his conviction without opinion, 123 A.D.2d 529, 506 N.Y.S.2d 502 (1st Dept.1986), and leave to appeal to the New York Court of Appeals was denied. 68 N.Y.2d 1003, 510 N.Y.S.2d 1036, 503 N.E.2d 133 (1986). In addition, Rodriguez made attempts to collaterally attack his conviction in state court, all of which were unsuccessful.

Rodriguez raised six issues on this petition for a writ of habeas corpus, which the district court denied on the merits. We do not reach the merits, however, because Rodriguez failed to fully exhaust his available state court remedies. We therefore remand to the district court with a direction to dismiss the petition.

## BACKGROUND

Frank Rodriguez was arrested and charged with the murder of Jesus Rivera based on an identification by Maritza Vallellanes who witnessed the murder. Vallellanes, the prosecution's main witness at trial, testified that she saw Rodriguez arguing with another person at 8:00 p.m. on May 27, 1984, and heard Rodriguez say three times, "I'm going to kill him." Shortly after midnight, she saw Rodriguez grab the arm of another man, who was not the same person he was arguing with earlier. The man broke away from Rodriguez and started running. Rodriguez then pulled out a gun, shot the other man three times, threw the gun to someone else, and fled. The shooting occurred 30 feet away from Vallellanes on a well-lit street.

Two days after Vallellanes had witnessed the murder, she went to the police precinct and looked at photographs of individuals who had previously been arrested in the precinct. She identified one photograph as the individual to whom Rodriguez had thrown the gun, and stated that another looked like Rodriguez, although she was not sure whether it was he or not. The next day, Vallellanes saw Rodriguez in the street and called the police who were able

to arrest him. She testified that she recognized Rodriguez from the neighborhood.

Based almost entirely on Vallellanes's testimony, the jury returned a verdict of guilty. Rodriguez appealed his conviction, raising two claims. First, he argued that the prosecution's failure to preserve the photograph Vallellanes had identified as looking like the murderer denied him his due process right to a fair trial. Contrary to normal police procedure, the photograph was not kept, nor was any record of her identification saved by the police officers. As a result, Rodriguez was denied the opportunity of comparing her initial identification with himself.

Second, Rodriguez claimed that a supplemental jury charge used by the trial court in response to a jury note coerced the jury into finding him guilty. During deliberations, the jury sent a note to the trial court which was marked as exhibit 4. The note stated:

> Requesting Alternate # 1
> Jurist "Nora" not competent.

We cannot reach a conclusion with her. The trial court ordered the jury returned to the courtroom and responded to the note with a supplemental jury instruction. The court did not read the note into the record, but simply re-instructed the jurors generally on their duties and urged them to continue to deliberate and reach a decision. Approximately 30 minutes later, the jury returned a unanimous guilty verdict.

When the trial court asked Rodriguez if he had anything to say before sentence was imposed, he stated that his attorney "told me you said that one of the jurors was incompetent. That would have called for a mistrial. I don't know why he didn't say anything there." The judge responded:

> Just so the record is clear, I never stated at any time that one of the jurors was incompetent. I believe there was a note from the jury during the course of deliberations, which was marked Court Exhibit No. 4, in which the jury—the foreman of the jury had requested one of the jurors, Nora, was not competent, "We cannot reach a conclusion with her,"

and they had requested an alternate be substituted.

Rodriguez claimed that the supplemental jury charge was an erroneous *Allen* charge, *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), because it failed to instruct the jurors that they need not yield their conscientious convictions. The Appellate Division obviously disagreed, for it affirmed the conviction, unanimously and without opinion.

Rodriguez then sought relief under N.Y. Crim.Proc. Law § 440.10. He claimed that he had received ineffective assistance of trial counsel because his counsel failed to have the jury note made a part of the record, and also failed to move for a mistrial when the note was not made a part of the record. This ineffective-assistance claim was rejected as procedurally barred because the court found that there were sufficient facts on the record to provide a basis for a direct appeal on the same grounds. N.Y.Crim.Proc.Law § 440.10(2)(c).

More significantly, Rodriguez also claimed that newly discovered evidence demonstrated he had not committed the murder for which he was convicted. While a prisoner in Ossining Correctional Facility, a fellow inmate, Israel Igartua, overheard Rodriguez discussing his case and informed him that he had information concerning the killer in the case and that he knew that Rodriguez was not the killer. However, this information may have been available at trial, as indicated by the following colloquy, which occurred during the *Wade* hearing:

> Mr. Rivera (Rodriguez's counsel): The other thing is, Judge, I have been advised that there is possible eyewitness that is in custody and he is in court today up in the fourth floor.
>
> He is being lodged in the Bronx House of Detention. His name is Israel Igartua, and I was seeing what possibly I can do to speak to this particular individual or have my investigator speak to him before we start the trial.
>
> \* \* \* \* \* \*
>
> The Court: Why don't you check the court papers today \* \* \*

Mr. Rivera: A good idea.

Rodriguez's motion to vacate the conviction based on newly discovered evidence was denied because Igartua's statement was unsworn, lacked specificity and reliability, and therefore failed to satisfy the procedural requirements of N.Y.Crim. Proc.Law §§ 440.30(1) and (4)(b).

Rodriguez also tried to get information about an individual named "Teco", who was supposedly the man who had caught the gun thrown by the killer after the murder. Pursuant to the New York State Freedom of Information Law, N.Y.Pub. Off.Law § 84 *et seq.*, Rodriguez requested information from the Bronx County District Attorney's Office about alleged statements made to an assistant district attorney by "Teco". The District Attorney's Office refused to give him this information. Rodriguez then petitioned under N.Y.C.P. L.R. Article 78 to compel the District Attorney's Office to disclose the alleged statements, but the New York Supreme Court dismissed the petition because Rodriguez had failed to exhaust his administrative remedies under N.Y.Pub.Off.Law § 89(4)(a) & (b).

Finally, Rodriguez attempted to get relief via a motion in the nature of a writ of error *coram nobis*. He argued that he had received ineffective assistance of appellate counsel because his appellate counsel had failed to argue ineffective assistance of his trial counsel. The Appellate Division denied this motion as well.

## DISCUSSION

Rodriguez raised six issues on this petition for habeas corpus. He argued that he was denied his due process rights because: (1) the prosecution failed to preserve the photograph of the individual Vallellanes had stated looked like the defendant; (2) the trial court erred by responding to a note from the jury without consulting counsel, by not making the note a part of the record, and by failing to investigate the alleged incompetency of one of the jurors; (3) the supplementary instruction given in response to the jury note coerced the jury into reaching a verdict; (4) the evidence discovered after his conviction shows that he did not commit the murder; (5) he received ineffective assistance of trial counsel; and (6) he received ineffective assistance of appellate counsel.

While the district court found that all available state court remedies with respect to all of Rodriguez's claims had been exhausted, we disagree. We therefore remand with a direction to dismiss the petition as containing both exhausted and unexhausted claims. *Rose v. Lundy*, 455 U.S. 509, 522, 102 S.Ct. 1198, 1205, 71 L.Ed.2d 379 (1982).

Although the prosecution argued before the district court that only the claim based on newly discovered evidence was unexhausted, it now correctly contends that other claims as well were not exhausted and require that the petition be dismissed. We agree that some of the bases for Rodriguez's ineffective assistance of counsel claims are unexhausted and require that the state court be given an opportunity to review those claims. In addition, we agree that some of Rodriguez's claims with respect to the jury note incident have not been exhausted.

Any conviction based on a single witness's identification invites close scrutiny. In this case there seem to have been two additional eyewitnesses, but neither one was called to testify nor has any satisfactory explanation for their not testifying been presented. One of those witnesses was "Teco", the man to whom Rodriguez threw the gun. After he was identified by Vallellanes, was he interviewed by the police? Did he make any statements that would have exonerated Rodriguez? Did Rodriguez's attorney pursue this line of investigation?

The other eyewitness was Igartua, who was known to Rodriguez's attorney before trial and who, after trial, has stated in writing that Rodriguez was not the murderer. Did Rodriguez's attorney pursue this lead as suggested by the trial court? If so, what did Igartua then say as to Rodriguez's culpability and as to his own willingness to testify?

It may be that both the state and Rodriguez's counsel fully explored these questions prior to or during the trial and that neither had any reason to produce these witnesses. However, nothing in the record thus far indicates that either of these avenues was explored by counsel, and a failure to explore them in a case such as this, based on identification testimony by a single witness, might well amount to ineffective assistance of counsel.

It is therefore significant that Rodriguez's claim of ineffective assistance of counsel has not received full consideration in the state courts. That claim is based on six enumerated allegations: (1) failing to object to the jury note not being read into the record; (2) failing to object to the supplemental jury charge; (3) failing to move for a mistrial based on a juror's incompetence; (4) failing to investigate whether the prosecution had searched for the photograph identified by Vallellanes; (5) failing to investigate possible "favorable" statements made by "Teco", the man to whom the gun was thrown after the shooting; and (6) failing to have an investigator photograph the crime scene. By fair interpretation, he also implies that his trial counsel was ineffective for failing to interview and call to testify eyewitness Igartua, who now says he would provide exculpatory testimony. Only the first two of these were raised before the state court; the remaining five appear for the first time in this habeas petition.

Since Rodriguez's claim of ineffective assistance of counsel can turn on the cumulative effect of all of counsel's actions, all his allegations of ineffective assistance should be reviewed together. *See Strickland v. Washington,* 466 U.S. 668, 695–96, 104 S.Ct. 2052, 2068–69, 80 L.Ed.2d 674 (1984). "The state courts should have been given the opportunity to consider all the circumstances and the cumulative effect of all the claims as a whole." *Grady v. LeFevre,* 846 F.2d 862, 865 (2d Cir.1988). Even if Rodriguez's claims, evaluated individually, might not amount to a due process violation sufficient to require habeas relief, nevertheless, given the number of questionable circumstances in this case, before a federal court intervenes, the state court should be given an opportunity to carefully review all of Rodriguez's claims together to determine whether collateral relief may be appropriate.

## CONCLUSION

For the foregoing reasons, we remand to the district court with a direction to dismiss the petition for failure to exhaust state remedies.