Robert CAMARANO, Petitioner,

v.

Frank IRVIN, Superintendent Wende Correctional Facility, Respondent.

No. 90 Civ. 6821 (RPP).

United States District Court, S.D. New York.

Dec. 9, 1994.

Robert Camarano, Stormville, New York, Robert M. Morgenthau, District Attorney of County of New York, Marc Frazier Scholl, Asst. Dist. Atty., New York City, for plaintiff.

## ORDER ACCEPTING MAGISTRATE'S REPORT AND RECOMMENDATION

ROBERT P. PATTERSON, District Judge.

This Court has received and reviewed the Report and Recommendation (the "Report") issued by Magistrate Judge Sharon E. Grubin on October 19, 1994, the objections to the Report and Recommendation from Petitioner dated October 31, 1994, and a letter dated November 4, 1994 from Marc Frazier Scholl, Assistant District Attorney, Magistrate Judge Grubin's order of November 10, 1994, and a second letter from the Petitioner dated November 17, 1994 in the above-captioned action. The Court finds it is in agreement with the Report and Recommendation. Accordingly, it is hereby

ORDERED that the Report and Recommendation issued by Magistrate Judge Grubin on October 19, 1994, is accepted in accordance with 28 U.S.C. § 636(b). Accordingly, it is further

ORDERED that Petitioner's writ of habeas corpus is dismissed without prejudice to refiling after Petitioner has either exhausted his unexhausted claims or submitted a petition dropping them.

## REPORT AND RECOMMENDATION TO THE HONORABLE ROBERT P. PATTERSON, JR.

GRUBIN, United States Magistrate Judge:

Petitioner, currently an inmate at the Green Haven Correctional Facility, *pro se* seeks a writ of habeas corpus under 28 U.S.C. § 2254 to obtain his release from custody pursuant to a February 14, 1983 judgment of the New York State Supreme Court, New York County (Galligan, J.), convicting him after a jury trial of criminal sale of a firearm in the second degree, *see* N.Y. Penal Law § 265.11(2) (McKinney 1989), and three counts of criminal possession of a weapon in the third degree. *See* N.Y. Penal Law § 265.02(1) (McKinney 1989). Petitioner was sentenced as a persistent felony offender to four concurrent indeterminate terms of 15 years to life. I respectfully recommend that the petition be dismissed at this time without prejudice pursuant to the doctrine of *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), because it contains unexhausted as well as exhausted claims.

### BACKGROUND

Viewing the facts in a light favorable to the state, *see, e.g., Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Reddy v. Coombe,* 846 F.2d 866, 869 (2d Cir.), *cert. denied,* 488 U.S. 929, 109 S.Ct. 316, 102 L.Ed.2d 334 (1988); *Garcia v. War-*

*den,* 795 F.2d 5, 6 (2d Cir.1986), the evidence established that on February 9, 1982 at about 4:45 a.m. petitioner and a friend, Ellen Alberto, were parked in a station wagon on East 123rd Street between Park and Lexington Avenues in Manhattan. Two police officers driving in the area observed a young man, Willie Jones, in the street next to the station wagon who shouted at them, pointed to the car and said "They just robbed me. He has a gun." When the officers exited their car to investigate, petitioner and Alberto, who was driving, sped off, going north on Park Avenue and then east on 124th Street. After a high-speed chase through the Bronx ending on the George Washington Bridge and a struggle after petitioner tried to run from the officers, he was arrested and read his *Miranda* rights. After complaining of head pains petitioner was taken to Harlem Hospital and then to Central Booking where, after being read his *Miranda* rights again, he told a detective "I didn't rob the nigger. I was there to sell him the .38." Police found a 12–gauge sawed-off shotgun and a .9mm automatic pistol in the tire compartment of the station wagon. After interrogating Alberto, they went to 124th Street near Park Avenue to search for another weapon where, later, a .38–caliber revolver was found.

Witnesses called by the state at trial included Nick Santo and Thomas Galucci. Santo testified that in the early part of February 1982 and perhaps on the evening of February 8, 1982, after petitioner's brother and Santo's son had been arrested for burglarizing a stereo store, petitioner had told Santo that there were guns in Santo's house and that he wanted to find them and get rid of them. Petitioner, Alberto and Santo's wife had searched Santo's house and found a sawed-off shotgun and two guns which were given to petitioner to dispose of. Galucci, who was a gun store owner, testified that the .9mm automatic pistol found in the station wagon and the .38–caliber revolver found on 124th Street were among weapons that had been stolen from his store during a robbery on January 7. Petitioner was convicted of criminal possession of the 12–gauge sawed-off shotgun, the .9mm automatic pistol and the .38–caliber revolver and criminal sale of the .38–caliber revolver.

Petitioner appealed his conviction to the Appellate Division of the New York State Supreme Court on the following grounds: (1) there was insufficient evidence of possession of or intent to sell the .38–caliber revolver, petitioner's post-arrest statement having been "uncorroborated," and insufficient evidence of possession of the two guns found in the car, because, if not for certain erroneous evidentiary rulings, the jury would not have made the presumption provided by N.Y. Penal Law § 265.15(3) of possession of firearms found in automobiles; (2) petitioner's post-arrest statements were obtained in violation of his Fifth and Sixth Amendment rights because they were obtained in violation of the *Miranda* doctrine and due to the physical brutality and lengthy waiting period before arraignment inflicted upon him by the police; (3) three counts of the original indictment that had been originally dismissed were resubmitted to a new grand jury without a proper order under state law; (4) petitioner was denied a fair trial by the admission of evidence of uncharged crimes, the exclusion of certain medical records and expert testimony regarding petitioner's admission to hospitals on the day of his arrest and the following day which would have enabled him to attack the credibility of testimony as to his physical condition at the time of his post-arrest statements, the use of a "disfavored" jury instruction as to burden of proof, and improper summation remarks by the prosecutrix; and (5) petitioner was improperly adjudicated a persistent felony offender, and his sentence was excessive. On February 27, 1986 the Appellate Division affirmed petitioner's conviction without opinion, *People v. Camarano,* 117 A.D.2d 1024, 499 N.Y.S.2d 565 (1st Dep't 1986), and on April 7, 1986 the Court of Appeals of the State of New York denied leave to appeal. *People v. Camarano,* 67 N.Y.2d 940, 502 N.Y.S.2d 1032, 494 N.E.2d 117 (1986) (Hancock, Jr., J.).

Petitioner also filed four motions for collateral relief following his conviction. On March 8, 1985, prior to the Appellate Division's decision on his appeal, petitioner moved to vacate the judgment pursuant to N.Y.Crim.Proc.Law § 440.10(1)(g) & (h), claiming that "newly discovered" medical rec-

ords, which had been withheld by the District Attorney's office in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), reflecting his physical condition at the time of his alleged post-arrest statements showed that "perjured testimony" had been given against him and that he never made such statements at all or, even if it were assumed he had, they were involuntary. He also argued that new evidence showed one of the firearms had not been obtained from a gun store burglary and argued that the resubmission of charges to a new grand jury had been in violation of state law. On May 16, 1985 Justice Galligan denied the motion because petitioner made no showing that the evidence concerning his medical condition or the firearm could not have been produced prior to trial. Moreover, the medical evidence bore "at most only on an issue tangential to that of guilt or innocence," petitioner failed to show in what way the firearm evidence would have affected the jury verdict, and petitioner's allegations were insufficient to warrant any further inquiry. *People v. Camarano*, Indictment No. 4583/82, slip op. at 2–3. I can find no record of petitioner's having sought leave to appeal this decision to the Appellate Division.

On June 17, 1986 petitioner filed a second motion pursuant to § 440.10(1)(g) & (h), claiming again that "newly discovered" medical records showing the extent of his injuries after arrest, which had been withheld by the District Attorney's office with the complicity of Harlem and Beekman Hospitals in covering up police brutality and manipulating patient records and which he now attached to his motion, required a new trial and that his rights were violated by excessive delay prior to arraignment and by admission of his "involuntary" statements at trial which were, he contended, never even made at all. On September 11, 1986 Justice Galligan denied this motion, ruling (1) that the issues raised had already been raised and determined in petitioner's direct appeal of his conviction and in his prior § 440.10 motion and thus, under N.Y.Crim.Proc.Law §§ 440.10(2)(a) & (3)(b), could not be raised again; (2) that, in any event, the information contained in his medical records existed at the time of trial and petitioner had had a fair opportunity to liti-

gate those issues at trial; and (3) the "new" evidence "contains nothing which could have created even a remote probability that had it been received at trial (assuming arguendo its admissibility) it could have resulted in a verdict more favorable to defendant." With respect to petitioner's other arguments, they could have but had not been raised on appeal and thus were barred under N.Y.Crim.Proc. Law § 440.10(2)(c), and, in any event, "they wholly lack in substance." *People v. Camarano*, Indictment No. 4583/82, slip op. at 2–3. On January 6, 1987 petitioner was denied leave to appeal this decision to the Appellate Division.

On March 2, 1989 petitioner applied for a writ of error coram nobis in the Appellate Division, claiming then and in supplemental submissions on June 26, 1989 and October 16, 1989 that his appellate counsel denied him effective assistance by not having raised numerous claims on his appeal. He also argued that his trial counsel had rendered ineffective assistance, and, in addition to ineffective assistance of counsel claims, argued numerous substantive issues, including some of those raised on direct appeal and in his § 440.10 motions, as well as additional ones. On March 27, 1990 the Appellate Division denied petitioner's application without opinion. *People v. Camarano*, 1990 N.Y.App.Div. Lexis 3556 (1st Dep't).

On March 14, 1991 petitioner filed a third § 440.10 motion, contending that the trial court had not had jurisdiction over the action or over his person. He argued this was so because the indictment contained a nonwaivable jurisdictional defect with respect to N.Y.Penal Law § 265.11(2) (criminal sale of a firearm in the second degree) in that it charged that he had "possessed a firearm ... with the intent to sell said firearm to another," but had not included the statutory language that he was "not authorized" to possess the firearm. He contended that because the indictment omitted this essential element of the offense, the state was never required to prove that he was not authorized to possess a firearm, evidence was not adduced that he was not authorized, the burden of proof was shifted to the defense to show that he fell within one of the exemptions for pos-

session under the statute, and he was thus found guilty without the state's having proved every element of the crime. On June 6, 1991 Justice Galligan denied the motion, ruling that the indictment had given petitioner notice of the charges against him and, moreover, that authorization to possess a weapon is in the nature of a defense and need not be alleged in the indictment. *People v. Camarano,* Indictment No. 4583/82, slip op. at 3. On November 14, 1991 petitioner was denied leave to appeal this decision to the Appellate Division. *People v. Camarano,* 1991 N.Y.App.Div. Lexis 14734 (1st Dep't).

In May 1990 petitioner filed this petition in the United States District Court for the Western District of New York. Following its transfer to this court, on October 23, 1990 then Chief Judge Charles L. Brieant dismissed the petition without prejudice because petitioner had failed to allege that grounds denominated as VI, VIII, IX, X and XIII were exhausted. In a letter to the court petitioner withdrew grounds X and XIII but set forth allegations concerning exhaustion of the other three grounds. In an order of March 6, 1991 Judge Brieant restored the petition to the active calendar, stating, "Construed liberally, petitioner's allegations in his letter appear sufficient to justify a preliminary finding that he has demonstrated exhaustion of state remedies for grounds VI, VIII and IX."

The petition, which incorporates a 95–page memorandum of law supplemented by a 22–page "expansion of the record" asserting additional claims as well as numerous exhibits, nominally sets forth 14 grounds for relief. However, at least half set forth two or more discrete claims, and additional claims are contained throughout the body of petitioner's discussion. Liberally construing the petition so as to address all the claims petitioner appears to seek to set forth, the following alleged grounds for review are presented: [1]

I[1]. Petitioner was arrested without probable cause in violation of the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

I[2]. The prosecution improperly superseded the original felony complaint with another complaint in violation of the Fifth, Sixth and Fourteenth Amendments.

I[3]. The superseding complaint contained perjury in violation of the Fifth, Sixth and Fourteenth Amendments.

II. Statements by petitioner to the police were taken during a 72–hour delay between his arrest and his arraignment in violation of the Fifth, Sixth and Fourteenth Amendments.

III. N.Y.Penal Law § 265.11(2) is unconstitutional under the Fifth, Sixth and Fourteenth Amendments because it states no crime in that it "establishes no elements," is "vague, ambiguous and overbroad" and impermissibly shifts the burden of proof to the defendant.

IV. The indictment was defective because, with respect to N.Y.Penal Law § 265.11(2), it failed to name the person to whom petitioner allegedly intended to sell a firearm and thus failed to include all the elements of the crime in violation of the Fifth, Sixth and Fourteenth Amendments.

V[1]. There was insufficient evidence of petitioner's actual or constructive possession of any firearm in violation of the Fifth and Fourteenth Amendments.

V[2]. The application in petitioner's case of N.Y.Penal Law § 265.15(3)'s presumption of possession by persons occupying an automobile of a firearm found in it created an impermissible mandatory presumption, shifting the burden of proof to petitioner, in violation of the Fifth and Fourteenth Amendments.

VI[1]. The indictment returned by the second grand jury was jurisdictionally defective because it was obtained without a court order in violation of the Fifth, Sixth and Fourteenth Amendments.

---

1. I have, in order to facilitate discussion and reference to the claims, organized them so as to maintain petitioner's numbering denominations for each ground of the petition but to include breakdowns under each (by means of brackets

[ ]) of the individual claims actually set forth under each heading and/or claims included elsewhere in the petition that logically more relate to a particular heading other than that under which they are found.

VI[2]. Petitioner was denied notice and an opportunity to give evidence at the second grand jury proceedings in violation of the Fifth, Sixth and Fourteenth Amendments.

VII[1]. The court's jury charge concerning § 265.11(2), that "a person intends to sell a firearm when his conscious aim or objective is to sell such firearm," established a mandatory presumption of his guilt on the basis merely of his state of mind, in that it required the jury to speculate as to his state of mind, omitted reference to an overt act tending to effect the commission of a crime, and failed to instruct the jury that the presumption could be overcome, in violation of the Fifth, Sixth and Fourteenth Amendments.

VII[2]. The court failed to instruct the jury that "a mere showing of an intent to commit a crime coupled with some act, or acts, in the furtherance of the intent does not necessarily trigger the operability of the statute making a person guilty of an attempt when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such a crime," in violation of the Fifth, Sixth and Fourteenth Amendments.

VIII[1]. The car search was warrantless, there were no exigent circumstances and it was based on illegally obtained statements by Alberto in violation of the Fourth and Fourteenth Amendments.

VIII[2]. Petitioner was denied the opportunity at a pretrial hearing to contest the legality of his arrest and of the car search in violation of the Fourth, Fifth, Sixth and Fourteenth Amendments.

IX[1]. Petitioner's alleged post-arrest statements were the result of beatings, injury and coercion and were admitted into evidence in violation of the Fifth, Sixth and Fourteenth Amendments.

IX[2]. The court denied petitioner the opportunity to introduce medical records and expert testimony that would have shown the extent of his injuries and that the statements attributed to him were involuntary in violation of the Fifth, Sixth and Fourteenth Amendments.

IX[3]. There was no corroboration of petitioner's alleged statement about selling the .38–caliber revolver as required by N.Y.Crim. Proc.Law § 60.50 in violation of the Fifth, Sixth and Fourteenth Amendments.

IX[4]. Petitioner was denied effective assistance of trial counsel, in violation of the Fifth, Sixth and Fourteenth Amendments, in general and in particular for:

[i]. failing to raise the issue of excessive prearraignment delay [see Claim "II"];

[ii]. failing to challenge the indictment [see Claim "V"];

[iii]. failing to challenge the car search;

[iv]. failing to succeed in introducing medical records and expert testimony;

[v]. failing to object to or challenge the use of the illegally-obtained statements;

[vi]. failing to call a physician designated as a witness;

[vii]. failing to argue that there was no corroboration of petitioner's alleged statement about selling the .38–caliber revolver; and

[viii]. failing to object to the omission of jury instructions based on N.Y.Crim.Proc. Law § 60.45(2) (when an admission or other statement is "involuntarily made") and § 60.50 (requiring corroboration of an admitted crime) [see Claim "XI"].

IX[5]. Petitioner was denied effective assistance of appellate counsel in violation of the Fifth, Sixth and Fourteenth Amendments, in general and in particular for:

[i]. failing to challenge the legality of the car search [see Claim "VIII"]; and

[ii]. failing to argue the absence of the corroboration required by N.Y.Crim.Proc. Law § 60.50.

X. (Withdrawn.)

XI[1]. The court failed to instruct the jury on N.Y.Crim.Proc.Law § 60.45(2) and § 60.50 [2] in violation of the Fifth, Sixth and Fourteenth Amendments.

---

**2.** Petitioner's memorandum states § 60.40, but I assume it is a typographical error and he meant

§ 60.50. Section 60.40 pertains to proof of pre-

XI[2]. The jury instructions omitted "any reference to presumption of innocence, reasonable doubt, coercion, threats, the time between arrest, arraignment and the time the statements were allegedly made and the critical issue of credibility," in violation of the Fifth, Sixth and Fourteenth Amendments.

XII. The prosecution falsified *Brady* material by scribbling over statements on a "voluntary disclosure form" that 33 yellow capsules and 49 blue capsules were found on petitioner, thus showing that the prosecution was aware that petitioner was buying drugs from Willie Jones, not robbing him or attempting to sell him a firearm, in violation of the Fifth, Sixth and Fourteenth Amendments.

XIII. (Withdrawn.)

XIV. The state withheld at trial legible copies of notes taken by a police officer on the scene on the night of petitioner's arrest and other exculpatory material that petitioner has now obtained under New York's Freedom of Information Law, in violation of the Fifth, Sixth and Fourteenth Amendments.

*DISCUSSION*

I.

■ The requirement of the federal habeas corpus statute, 28 U.S.C. § 2254, that a person in state custody exhaust his or her state remedies before seeking federal habeas corpus review is based on considerations of comity between federal and state courts, ensuring that the state courts have an opportunity to consider and correct any violations of their prisoners' federal constitutional rights. *See, e.g., Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); *Daye v. Attorney General of New York,* 696 F.2d 186, 191 (2d Cir.1982) (en banc), *cert. denied,* 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984); *Mercado v. Henderson,* 733 F.Supp. 19, 21 (S.D.N.Y.1990); *Castillo v. Sullivan,* 721 F.Supp. 592, 593 (S.D.N.Y. 1989). Exhaustion requires a petitioner to have fairly presented at each available level of the state courts the same federal constitutional claims, legally and factually, raised in vious conviction which petitioner does not dis-

his or her petition to the federal court so that the state courts, including the state's highest court, will have had the opportunity to pass on them. *Picard v. Connor,* 404 U.S. at 275–76, 92 S.Ct. at 512–13; *Daye v. Attorney General of New York,* 696 F.2d at 191; *Klein v. Harris,* 667 F.2d 274, 282–83 (2d Cir.1981). However, "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred.'" *Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991) (quoting *Harris v. Reed,* 489 U.S. 255, 263 n. 9, 109 S.Ct. 1038, 1043 n. 9, 103 L.Ed.2d 308 (1989)). "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." *Id. See also Coleman v. Thompson,* 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 2557 n. 1, 115 L.Ed.2d 640 (1991).

■ A "mixed" petition, presenting both exhausted and unexhausted claims, must be dismissed in its entirety. A petitioner may then exhaust his unexhausted claims and subsequently come back to the federal court if he or she does not obtain the relief sought from the state courts or file a new petition dropping the unexhausted claims. *Rose v. Lundy,* 455 U.S. 509, 514, 522, 102 S.Ct. 1198, 1201, 1205, 71 L.Ed.2d 379 (1982); *Grey v. Hoke,* 933 F.2d at 120; *Rodriguez v. Hoke,* 928 F.2d 534, 537–38 (2d Cir.1991); *Pesina v. Johnson,* 913 F.2d 53, 54 (2d Cir. 1990).

■ Another doctrine applicable to petitioner's case herein is the federal procedural forfeiture doctrine:

[W]hen a state prisoner has failed to raise his federal constitutional claim in the state courts in accordance with state procedural rules, including those requiring that claims of constitutional defects in the trial be raised on direct appeal from a conviction, there has been a procedural default that bars federal habeas review unless the petitioner shows both cause for the noncompliance and prejudice resulting from the alleged constitutional violation. The principle is relaxed when the state courts themcuss and is not germane to his trial.

selves have disregarded the default and decided the constitutional claim on the merits.

*Roman v. Abrams,* 822 F.2d 214, 222 (2d Cir.1987), *cert. denied,* 489 U.S. 1052, 109 S.Ct. 1311, 103 L.Ed.2d 580 (1989). *See Coleman v. Thompson,* 501 U.S. at 728–33, 111 S.Ct. at 2553–56; *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

## II.

█ Petitioner can be seen to have raised claims V[1], V[2], IX[1], IX[2] and IX[3] in his direct appeal and sought leave to appeal their denial to the New York State Court of Appeals. Claims IX[5][i] and IX[5][ii] (ineffective assistance of appellate counsel) arguably were implicit in petitioner's application for a writ of error coram nobis. Ground II was raised in petitioner's second § 440.10 motion and leave to appeal was denied by the Appellate Division. Therefore, petitioner has exhausted state remedies with respect to these claims.

With respect to petitioner's other 23 claims, I find that they were not fairly presented to the New York courts. Claims VIII[2] and IX[4][iii] appear never to have been raised at any point prior to this petition. In his application for a writ of error coram nobis to the Appellate Division, as mentioned above, petitioner raised not only instances of ineffective assistance of appellate counsel but also issues of ineffective assistance of trial counsel and numerous other claims of trial court error and prosecutorial misconduct in their own right. Thus, he argued what can be seen in this petition as claims similar to I[1], I[2], I[3], III, IV, VI[2], VII[1], VII[2], VIII[1], IX[4][i], IX[4][ii], IX[4][iv], IX[4][v], IX[4][vi], IX[4][vii], IX[4][viii], XI[1], XI[2], XII and XIV. However, petitioner did not present those claims directly to the New York courts in his direct appeal or his § 440.10 motions, and his application to the Appellate Division for a writ of error coram nobis was an improper procedural vehicle to raise them under New York law and did not allow that court to consider them. Under New York law, only his claims concerning his appellate counsel were before that court.

█ For exhaustion purposes, a petitioner "must have employed the proper state law procedural vehicle so that the state courts were afforded the opportunity to consider the claims raised on their merits." *Walker v. Dalsheim,* 669 F.Supp. 68, 70 (S.D.N.Y.1987) (citing *Dean v. Smith,* 753 F.2d 239 (2d Cir.1985)). *See also Bentley v. Scully,* 851 F.Supp. 586, 603 (S.D.N.Y.1994) (petitioner having "employed an incorrect procedure to litigate [this] ground ... [, it] remain[s] unexhausted and may not be reviewed by this Court.") Under New York law "an application for a writ of error *coram nobis* is not an appropriate vehicle" for claims that would properly be addressed to the trial court in a § 440.10 motion, including a claim of ineffective assistance of trial counsel like petitioner's here. *Cortez v. Scully,* 717 F.Supp. 224, 226 (S.D.N.Y.1989). *Accord: People v. Gordon,* 183 A.D.2d 915, 584 N.Y.S.2d 318 (2d Dep't 1992). *See also Walker v. Dalsheim,* 669 F.Supp. at 70–72; *People v. Ramos,* 63 N.Y.2d 640, 643, 479 N.Y.S.2d 510, 512, 468 N.E.2d 692, 694 (1984); *People v. Brown,* 45 N.Y.2d 852, 853, 410 N.Y.S.2d 287, 382 N.E.2d 1149 (1978). The essence of an application for a writ of error coram nobis is that it is addressed to the very court which rendered the judgment or order from which relief is sought. *People v. Bachert,* 69 N.Y.2d 593, 599, 516 N.Y.S.2d 623, 627, 509 N.E.2d 318, 322 (1987); *see also Mathis v. Hood,* 851 F.2d 612, 614–15 (2d Cir.1988). Thus, in *People v. Gordon,* the Appellate Division denied an application for a writ of error coram nobis based on an alleged *Sandstrom* error in the trial court's jury charge, making it clear that "[i]n a criminal action, the writ of error coram nobis lies in this court only to vacate an order determining an appeal on the ground that the defendant was deprived of the effective assistance of appellate counsel." 183 A.D.2d at 915, 584 N.Y.S.2d at 318.

█ The above notwithstanding, however, with the exception of claims IX[4][i], IX[4][ii], IX[4][iii], IX[4][iv], IX[4][v], IX[4][vi], IX[4][vii], IX[4][viii] (all of petitioner's claims of ineffective assistance of trial counsel) and claim XIV (relating to evidence discovered after trial), the remaining 14

claims, even though not ever presented or presented only in the coram nobis application, are exhausted for purposes of federal habeas corpus review because it is clear the state courts would now hold that such claims are procedurally barred from their review and, as discussed at page 16 above, in such circumstances, "a petitioner no longer has 'remedies available in the courts of the State,'" *Grey v. Hoke*, 933 F.2d at 120, and, thus, has satisfied the exhaustion requirement.[3] With respect to the ineffective assistance of trial counsel claims (IX[4][i]–[viii]), review may still be available by means of a § 440.10 motion in the trial court. Although petitioner has already filed three § 440.10 motions without including these claims, the trial court retains the discretion to consider another motion raising them. *See* N.Y.Crim. Proc.Law § 440.10(3). Therefore, "petitioner has not exhausted his state remedies with respect to his ineffective assistance of counsel claim[s]." *Castillo v. Sullivan*, 721 F.Supp. at 594. *See also Rodriguez v. Hoke*, 928 F.2d at 537–38; *Sanford v. Senkowski*, 791 F.Supp. 66, 68–69 (E.D.N.Y.1992); *Cortez v. Scully*, 717 F.Supp. at 226; *Williams v. Scully*, Civ. No. 87–742, 1989 WL 113164 at *2 (E.D.N.Y. Sept. 15, 1989). With respect to ground XIV, wherein petitioner claims to have discovered new evidence that the New York courts necessarily would have had no

opportunity to review, he must present it to them in order to exhaust this claim under N.Y.Crim.Proc.Law § 440.10(1)(g).[4] Given the presence of grounds IX[4][i–viii] and XIV, which remain unexhausted, and the other grounds which have been exhausted, the petition is a "mixed" one under *Rose v. Lundy*.

However, but for the possibility petitioner can establish cause and prejudice, the 14 claims of I[1], I[2], I[3], III, IV, VI[1], VI[2], VII[1], VII[2], VIII[1], VIII[2], XI[1], XI[2] and XII would be barred from our review under the procedural forfeiture doctrine because of the defaults and forfeitures in the state courts (*see* p. 20 and footnote 3, above). The sole "cause" petitioner has advanced for such defaults is the alleged ineffective assistance of trial counsel. To prevail on any of these claims on that basis, however, petitioner must still demonstrate ineffective assistance under the standard established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Attorney error short of ineffective assistance of counsel does not constitute cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 492, 106 S.Ct. 2639, 2647, 91 L.Ed.2d 397 (1986). It is important for petitioner to be hereby advised that failure to properly claim ineffective assistance of trial

---

3. Claims I[1], I[2], I[3], III, IV, VI[2], VII[1], VII[2], VIII[1], VIII[2], XI[1], XI[2] and XII are procedurally barred because they could have been raised on direct appeal. *See* N.Y.Crim. Proc.Law § 440.10(2)(c); *Washington v. James*, 996 F.2d 1442, 1447 (2d Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 895, 127 L.Ed.2d 87 (1994); *Gonzalez v. Sullivan*, 934 F.2d 419, 422 (2d Cir.1991); *Holmes v. Bartlett*, 810 F.Supp. 550, 555 (S.D.N.Y.1993). At least some of these were forfeited for other reasons as well. For example, claims VII[1], VII[2], XI[1] and XI[2] were forfeited as well because they involved alleged errors in jury instructions to which no objection was made. *See* N.Y.Crim. Proc.Law § 470.05(2). Although claim VI[1] was raised on petitioner's direct appeal, he presented it only as a question of New York law and thus did not fairly present the New York courts with the federal constitutional question he asserts here, *Daye v. Attorney General of New York*, 696 F.2d at 194, but because he could have raised the federal claim on the appeal, it, too, is barred. *Washington v. James*, 996 F.2d at 1447.

4. Petitioner does not state when the "new" material attached to his petition was discovered, ex-

cept insofar as he states it was discovered after trial, but a review of the record shows that none of it is the same as that presented to Justice Galligan in his § 440.10 motions. Furthermore, petitioner has more recently twice moved herein for a conference or evidentiary hearing with respect to alleged newly discovered material which he says he obtained under New York's Freedom of Information Law. It is unclear whether any of this material differs from the "new" material already attached and presented by his petition, but his motions, brought last year and in April of this year, are replete with the words "recently-discovered" and "new," and I understood them to refer to material obtained *since* the filing of his petition; hence, his requests for an immediate hearing or conference on them. I denied his requests since he did not and continues to fail to submit copies of any of the material, identify it, or indicate why a hearing would be appropriate at this time. To the extent it is material obtained since filing his petition herein that he seeks to make part of the petition, it, too, must be first presented to the New York courts.

counsel in the New York courts bars him from pleading it as a cause for procedural defaults. *See, e.g., Murray v. Carrier,* 477 U.S. at 489, 106 S.Ct. at 2646; *Gonzalez v. Sullivan,* 934 F.2d at 422; *Hamilton v. Hood,* 806 F.Supp. 429, 433 (S.D.N.Y.1992). Therefore, unless petitioner properly presents his ineffective assistance claims to the state courts and properly exhausts them, claims I[1], I[2], I[3], III, IV, VI[1], VI[2], VII[1], VII[2], VIII[1], VIII[2], XI[1], XI[2] and XII of his petition herein would be wholly barred from this court's review.

### CONCLUSION

Given the presence in the petition of both exhausted and unexhausted claims, it must be dismissed without prejudice pursuant to *Rose v. Lundy* and its progeny. *See also, e.g., Rodriguez v. Hoke,* 928 F.2d at 537–38; *Pesina v. Johnson,* 913 F.2d at 54. Petitioner has the options of (a) exhausting his state remedies with respect to the unexhausted claims and then, should he not have obtained relief from the state courts, refiling his petition here, or (b) refiling his current petition omitting the unexhausted claims. He is hereby cautioned, however, that, in the event he chooses the second option, any subsequent petition he may seek to file thereafter asserting those claims may be dismissed as an abuse of the writ. *See McCleskey v. Zant,* 499 U.S. 467, 489–96, 111 S.Ct. 1454, 1467–72, 113 L.Ed.2d 517 (1991); *Rose v. Lundy,* 455 U.S. at 520–21, 102 S.Ct. at 1204–05. Furthermore, as explained above, if he chooses the second option, this court will dismiss claims I[1], I[2], I[3], III, IV, VI[1], VI[2], VII[1], VII[2], VIII[1], VIII[2], XI[1], XI[2] and XII because they will be procedurally barred from review because of his failure to show cause for the procedural defaults pertaining to them during the state proceedings.[5]

Accordingly, I respectfully recommend that your Honor dismiss this petition at this time without prejudice to refiling after petitioner has either exhausted his unexhausted claims or submitted a petition dropping them.

The parties are hereby directed that if you have any objections to this Report and Recommendation you must, within ten (10) days from today, make them in writing, file them with the Clerk of the Court and send copies to the Honorable Robert P. Patterson, Jr., to the opposing party and to the undersigned. Failure to file objections within ten (10) days will preclude later appellate review of any order that will be entered by Judge Patterson. *See* 28 U.S.C. § 636(b)(1); Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure; *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of HHS,* 892 F.2d 15, 16 (2d Cir.1989) (per curiam); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 58 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237 (2d Cir.1983) (per curiam).

Oct. 19, 1994

---

**5.** As mentioned at the outset, I have attempted, for petitioner's sake, to include in this Report and Recommendation all claims I believe he seeks to assert to this court. If I have improperly set forth any he does not mean to raise, he may "withdraw" them upon refiling.