■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MARVIN SANDERS, Appellant.—Judgment, Supreme Court, New York County (Thomas Galligan, J.), rendered March 9, 1984, convicting defendant, after a jury trial, of four counts of murder in the second degree (two counts of intentional murder and two counts of felony murder), and sentencing him to four concurrent indeterminate terms of imprisonment of from 25 years to life, unanimously reversed, on the law, and the matter is remanded for a new trial.

Defendant Sanders and two codefendants, Alvin Dow and Prince Sweeper, were jointly indicted and tried for the murder of two drug dealers, James Davis and Joseph Watson. The People proved at trial that while it was Sweeper and Dow who carried out the slayings, Sanders instigated and procured the homicides by steering the two killers to the scene of the crime, his sister Nadine's apartment, with information that drugs and money were stashed there. In a three-page handwritten statement to Detective Donovan, and a 79-page statement responding to inquiries by the Assistant District Attorney, defendant confessed his involvement in the crime, named his accomplices, and admitted that he knew Sweeper and Dow to be cold-blooded killers whose practice was to leave no eyewitnesses alive after raids of this kind. There was also proof that defendant, knowing this, contrived the absence of his sister at the time of the crime, and that he shared in the loot after the killers made good their escape.

After the jury verdict, but before sentencing, defense counsel discovered that in the course of its deliberations the jury had been inadvertently permitted to receive an unredacted transcript of defendant's confession marked only for identification instead of the redacted version actually received in evidence. In subsequent proceedings to vacate the verdict, the People conceded that this was prejudicial error as to Dow and Sweeper. They have since been retried and the matter of the unredacted transcript is no longer an issue as to them. How-

ever, with respect to defendant Sanders, the People success-
fully urged at Criminal Term, and now reiterate on appeal,
that the error in submitting the unredacted statement to the
jury was not sufficiently prejudicial to warrant a reversal of
his conviction. We do not agree because evidence of two
serious uncharged crimes committed by Sanders (one of which
was contained in the transcript even as redacted) was improp-
erly permitted to taint the verdict against him.

Sanders never became a witness on his own behalf. His
unredacted statement, unfortunately, contained extensive
questioning of him by the Assistant District Attorney concern-
ing a robbery charge filed by Barbara Felder, the mother of
his child with whom he lived. It was Ms. Felder's complaint
which provided the original predicate for his arrest in this
case. That the jury was exposed to information about this
crime, reference to which the People had earlier agreed on the
record to expunge, must be deemed prejudicial (People v
Bouton, 50 NY2d 130, 137-138; see, People v Rivera, 26 NY2d
304). The fact that defendant, in the same transcript, gave a
self-serving and exculpatory version of the incident could not
fully erase the potential prejudice.

We also hold that Criminal Term erred in declining to
redact that portion of defendant's statement which admitted
that three years prior to these homicides he had worked for
one of the victims, James Davis, in the latter's drug-selling
business. The rationale for the court's ruling was that this
admission established a basis for defendant's "knowledge of
how [Davis] transacted his business and how much money
* * * or how much drugs he might * * * have on a particular
occasion." The prejudice of branding defendant as a drug
dealer for this purpose far outweighed the probative value of
this evidence, particularly since defendant never disputed that
he knew Davis was in possession of money and narcotics when
he made his fatal disclosures to Davis' killers. Defendant's
statements revealed that he had learned of a specific new
shipment of heroin to Davis, and that there was money in the
apartment, by overhearing conversations to that effect on a
visit to his sister. In the absence of any necessity for this
disclosure of Sanders' prior criminal involvement in drug
dealing, this prejudice cannot be overlooked (see generally,
People v Ventimiglia, 52 NY2d 350; People v Santarelli, 49
NY2d 241; see also, People v Cook, 42 NY2d 204). Defendant's
knowledge of the manner in which Davis ran his narcotics
business in 1979 was neither material nor persuasive evidence

on the issue of whether appellant "set up" Davis and Watson to be robbed and killed.

We have carefully examined, and find lacking in merit, defendant's contention that his statements should be suppressed in their entirety. On the record made below, the trial court was amply supported in its determination that Louise Rivera's apartment, where the police arrested defendant without a warrant after entering without consent, was not defendant's place of residence, and that there was therefore no legitimate expectation of privacy such as would constitute a violation of defendant's rights under *Payton v New York* (445 US 573). We further find that when the Assistant District Attorney interviewed defendant, he did not violate his right to counsel simply because another assistant in the same office knew of unrelated charges pending against defendant, and was aware of the possibility that he was represented by counsel in one or more of those cases. The knowledge of one assistant of a suspect's pending cases cannot be automatically imputed to every other member of the large legal staff of the prosecutor's office. It is clear that no joint investigation was involved here, nor was the assistant deliberately insulated from any information about the pending cases *(see, People v Servidio,* 54 NY2d 951; *People v Cunningham,* 60 NY2d 930). Concur—Kupferman, J. P., Ross, Asch, Kassal and Wallach, JJ.