(April 30, 1987)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, ALVIN Dow, Appellant.—Judgment, Supreme Court, New York County (Myriam J. Altman, J., at trial; Thomas B. Galligan, J., at motion to suppress), rendered June 1, 1984, convicting defendant, after a jury trial, of two counts of

murder in the second degree and sentencing him to two concurrent terms of 25 years to life imprisonment, reversed, on the law, the conviction is vacated, defendant's motion to suppress an inculpatory statement is granted, and the matter is remanded for a new trial.

Defendant Dow and two codefendants, Prince Sweeper and Marvin Sanders, were indicted and tried for the murders, in connection with a robbery on November 3, 1982, of two drug dealers, James Davis and Joseph Watson. *(See, People v Sanders,* 128 AD2d 480.) Prior to trial, defendant moved to suppress his oral statement to Detective James Bratton wherein defendant admitted being present during the commission of the robbery. The motion was denied and the statement was admitted against defendant at his trial. We conclude, upon the undisputed facts, and the law hereinafter stated, that the motion to suppress defendant's statement should have been granted.

On May 25, 1983, Detective John Donovan arrested Marvin Sanders on a robbery complaint unconnected with the murders. Sanders told Detective Donovan that he, the defendant and Prince Sweeper had planned the robbery of Watson and Davis, and had discussed the need to kill both of them to eliminate any witnesses. Detective Donovan arrested defendant Dow at 12:30 A.M. on May 26, and took him to the 28th Precinct. Donovan told defendant that he was investigating the Watson/Davis homicides and read defendant his *Miranda* rights. According to Detective Donovan, after having been read his rights, "[Dow] stated that he didn't want to make a statement at that time."

The People emphasize the words "at that time" as constituting an "equivocal invocation" of the right to remain silent. We need not determine the issue raised by that contention, since Detective Donovan testified that upon his further questioning of defendant at the 28th Precinct "[Dow] said he had no statement to make", thus clearly invoking his constitutional right to remain silent.

Defendant was thereafter taken to Central Booking and charged with murder, but due to a backlog in processing he was taken to the 26th Precinct to be lodged overnight. At about 5:00 P.M. that same day, some 17 hours after defendant had been arrested and had invoked his right to remain silent, Detective James Bratton went to the 26th Precinct, at the request of an Assistant District Attorney, to ascertain whether defendant would be willing to speak to an Assistant District

Attorney about the homicides. Detective Bratton ultimately conceded that without readvising defendant of his *Miranda* rights, "I asked him if he wanted to run down to me what happened for the robbery and the homicide." In the course of that questioning defendant admitted he was present during the commission of the robbery, but he denied committing the homicides.

In *People v Ferro* (63 NY2d 316, 322), the Court of Appeals reviewed the authorities and principles pertaining to the narrow circumstances under which an accused may be questioned after having indicated that he wishes to remain silent: *"Miranda v Arizona* (384 US 436) requires not only that before interrogation can begin a suspect must be advised concerning his right to remain silent and of his right to counsel, but also that, 'If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease' *(id.,* at pp 473-474). Moreover, the rule being designed to counteract the coercive pressure of the custodial setting, a suspect's right to remain silent, once invoked, must be 'scrupulously honored' *(id.,* at p 479; *Michigan v Mosley,* 423 US 96, 103-104; *People v Wander,* 47 NY2d 724, 725; see *People v Grant,* 45 NY2d 366, 373, 376). He may not within a short period thereafter and without a fresh set of warnings be importuned to speak about the same suspected crime *(People v Gary,* 31 NY2d 68, 70; *Michigan v Mosley,* 423 US 96, 106, *supra;* see *People v Buxton,* 44 NY2d 33, 37), but a statement volunteered or spontaneously made will not be suppressible unless it is about the same crime and results from express questioning or its functional equivalent under circumstances which do not include fresh warnings and do not scrupulously honor the suspect's right to cut off questioning *(Rhode Island v Innis,* 446 US 291, 300-301; *Michigan v Mosley, supra; People v Bryant,* 59 NY2d 786, *supra)."*

We find that under the principles set forth in *People v Ferro (supra),* the facts surrounding the statement made to Detective Bratton cannot support the hearing court's implicit conclusion that defendant's right to cut off questioning was scrupulously honored. Accordingly, the statement must be suppressed and the case remanded for a new trial. We have considered defendant's other arguments for reversal and find them to be without merit. Concur—Murphy, P. J., Sandler, Sullivan, Milonas and Wallach, JJ.