■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT JOHNSON, Appellant. [628 NYS2d 672] —Judgment, Supreme Court, New York County (Antonio I. Brandveen, J.), rendered July 7, 1992, convicting defendant, after jury trial, of grand larceny in the fourth degree, and sentencing him, as a discretionary persistent felony offender, to a term of 15 years to life imprisonment, unanimously reversed, on the law, and the matter remanded for a new hearing and trial.

Indicted for robbery in the first degree, defendant was found guilty of the larcenous taking of a wallet, containing only identification papers and no money, from the person of a neighborhood acquaintance, Lester Mayers. The jury was free to reject defendant's explanation that Mr. Mayers had voluntarily relinquished the wallet to be held as a security pledge for an antecedent debt.

Complicating this rather simple issue on appeal, however, are the activities of the arresting officer, Detective Gilbert Pabon, promptly after his interview with complainant Mayers at the precinct. As revealed by the hearing and trial records, the detective made an afternoon visit to an apartment known to be leased to defendant's girl friend, where defendant frequently resided, and to which he possessed a set of keys. The detective, accompanied by his uniformed partner, Officer Lisa D'Augustine, banged on and shouted at the door of this apartment in an unsuccessful effort to gain entrance. Detective Pabon then knocked and was admitted to an adjacent apartment occupied by Julio Ortiz and his wife. After identifying himself to the Ortizes, the detective stated that he was seeking to enter the next-door apartment from the fire escape appurtenant to both residences. Borrowing a hammer from the cooperative Mr. Ortiz, the detective then walked through the latter's apartment to the fire escape and proceeded to bang on the barred gate of the apartment window next door, while allegedly announcing some threats to the well-being of defendant inside.

The detective, who appeared as a witness only at the trial, testified that after a brief exchange of words with defendant through the window, he returned to the hallway and again knocked on the girl friend's door, whereupon defendant opened it and was promptly arrested.

The trial was preceded by an omnibus *Mapp/ Wade/ Huntley* hearing, during which Ortiz testified that he had gone to the apartment next door while defendant was being arrested and handcuffed there, and that defendant had turned over to him the apartment keys for safekeeping. Ortiz then stated that shortly after the police had left with their prisoner, he and his wife went back into the girl friend's apartment and picked up a boxcutter (the weapon allegedly used in the robbery) and a wallet (the fruits of the crime). When Pabon unexpectedly returned a few minutes later to thank Ortiz for his assistance, Ortiz handed over these items and showed the detective where he had found them.

At the hearing, the prosecutor conceded on the record that Detective Pabon had committed perjury before the Grand Jury by testifying that *he* had recovered from the next-door apartment the boxcutter and the wallet, as well as defendant's clothing. Before the close of the hearing, defense counsel demanded that the People produce Detective Pabon as a witness. The trial court's denial of this application and refusal to hear this witness at that stage of the proceedings was reversible error. Obviously, the prosecutor's "concession" of Pabon's alleged perjury was scarcely the unsullied gift to the defense that it might have appeared at first blush. If Pabon had told the truth to the grand jurors, the prosecution's case would have faced suppression of the three items of physical evidence, two of which were gravely incriminating, and might well have scuttled the People's case at the hearing stage on the ground that they were the fruits of an illegal (warrantless) intrusion into defendant's residence (*Payton v New York*, 445 US 573).

Clearly, the defense was not bound by the People's concession. Furthermore, the account provided by Ortiz at the hearing was somewhat less than definitive; he was impeached not only by his extensive criminal record, but also by an earlier statement that it was his wife who had actually recovered the evidence from the girl friend's apartment. This error was not cured by the circumstance that Pabon testified at trial, ultimately adopting the final Ortiz version. The scope of defense counsel's inquiry of Pabon at trial was severely restricted by the court on the ground that no foundation for impeachment of this witness had been shown by the party who called him.

Irrespective of the outcome of a new hearing, there must be a new trial as well. The trial court erred in permitting repeated admission of testimony regarding defendant's exercise of his constitutional right to deny police access to his apartment without a warrant. While the court properly opined at the suppression hearing that defendant's possession of the keys to the apartment indicated his right to exclude others and his standing to assert a residential privacy interest, there is no question that this evidence was admitted solely for the improper purpose of showing defendant's alleged consciousness of guilt, as argued by the prosecutor during summation. Thus, even if the evidence had some relevance as background information, as argued by the People, any probative value was substantially outweighed by its prejudicial use (*see, People v Scarola*, 71 NY2d 769, 777). The trial court's belated instruction to strike the reference to "guilty conscience", coming after the court had overruled several defense objections, combined with the caution that the jury not speculate but base its determination on the evidence or lack thereof, cannot reasonably be considered to have cured the prejudice to defendant stemming from the prosecutor's exploitation of this testimony.

For future guidance, if the case is retried, we would note our agreement with the court's conclusion, in its unpublished opinion of November 16, 1992, that defendant's spontaneous statements made to Mayers while defendant was in custody at the precinct are admissible as sufficiently attenuated from any illegal arrest; they were directed toward the complainant and not to the police, who did nothing to instigate them (*cf., People v Harris*, 77 NY2d 434). Finally, we note that defendant's motion to dismiss the indictment based on Pabon's allegedly false testimony was properly denied for the reasons stated by Justice Brandveen (156 Misc 2d 159), namely, that Mayers' own unimpeached testimony before the Grand Jury established every element of the crime charged (*see, People v Figueroa*, 167 AD2d 101, 104).

In view of the foregoing, it is unnecessary to reach defendant's other claims of error. Concur—Sullivan, J. P., Rosenberger, Wallach, Asch and Williams, JJ.