■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CARLOS JOSE, Appellant. [676 NYS2d 545] —Judgment, Supreme Court, New York County (Herbert Adlerberg, J., on suppres-

sion motion; Harold Beeler, J., at jury trial and sentence), rendered May 12, 1995, convicting defendant of criminal possession of a controlled substance in the first and third degrees, criminal possession of a weapon in the third degree, and two counts of criminally using drug paraphernalia in the second degree, and sentencing him to concurrent prison terms of 15 years to life, 1 to 3 years, 1 to 3 years, 1 year and 1 year, respectively, affirmed.

We previously held defendant's appeal from his judgment of conviction in abeyance and remanded the matter for a *Mapp* hearing on the ground that it was error to summarily deny defendant's motion in this respect (239 AD2d 172). In so doing, we in no way intended to suggest, much less hold conclusively, that defendant actually possessed standing merely because in his pocket at the time of his arrest was a key to the apartment in which he and two other individuals were found. Rather, all we intended to hold was that the assertion that he had such key was sufficient to warrant a hearing on the very issue of standing itself. That is, having made sufficient factual allegations to get to a hearing, defendant still had the burden at that hearing of "establishing standing by demonstrating a personal legitimate expectation of privacy (*People v Wesley*, 73 NY2d 351)" (*People v Whitfield*, 81 NY2d 904, 906; *see also, People v Delgado*, 204 AD2d 242, *lv denied* 84 NY2d 825). The hearing court on remand (Michael J. Obus, J.) was not bound, as it believed, by a finding on our part that defendant possessed standing, and its fact-finding function was not limited in this respect to whether defendant's allegation that he had the key was truthful, particularly given that this was not disputed by the People. Based on the evidence adduced at the hearing, we find that defendant failed to sustain his burden and, accordingly, the motion to suppress, upon remand, should have been denied.

The undisputed evidence revealed that defendant, Pedro Encarnacion and Alberto Hernandez were inside apartment 5D, that it was Encarnacion who opened the door to the police and that defendant and Hernandez were seated on the sofa when the police entered. The evidence further showed that while defendant had a key to the apartment in his pocket, the rent receipt on the coffee table was in the name of Carmen Maloon, Con Edison service was in the name of Salvatore Perez and telephone service was in yet another name, Lordes Velo. In addition, defendant told the police that he lived in apartment 5K, while the other two men lived nearby. Apart from the key, nothing connected defendant to the apartment—there was nothing in it that was identified as belonging to him.

Following the hearing, both sides addressed the issue of standing in their oral arguments. Thereafter, the hearing court issued a written decision, stating that our prior order had conferred standing on defendant and was "binding" on it, and that, in any event, defendant's standing was supported by the evidence. It proceeded to find that the police entry was not justified by exigent circumstances or consent and granted the motion to suppress.

Upon consideration of all the circumstances, we find that defendant's possession of the key, failure to admit the police and presence behind the closed door of the apartment are insufficient to sustain his burden of establishing a legitimate expectation of privacy in the premises. Given the absence of anything other than the key linking him to the apartment, the evidence that others paid the rent and utility bills and the fact that someone else ultimately opened the door to the police, defendant failed to meet the two-pronged test of exhibiting a subjective expectation of privacy and demonstrating that such expectation is an objectively reasonable one recognized by society (*People v Mims*, 88 NY2d 99). As already noted, defendant had the burden of proof at the suppression hearing to establish his standing to challenge the police conduct at issue (*People v Rodriguez*, 69 NY2d 159, 163), and he could do this either by producing evidence, such as his own testimony, or by relying on the evidence presented by the People (*People v Whitfield, supra*, at 906). Here, defendant offered no evidence whatsoever, and the People's evidence did not support his claim.

While it is not necessary to reside in or otherwise have a permanent possessory interest in particular premises in order to have a reasonable, legitimate expectation of privacy, the mere possession of a key may not suffice to establish dominion and control over them. Here, under all the surrounding circumstances set forth above, possession of a key merely showed that defendant had temporary access to the apartment; there was no evidence explaining how he came into possession of the key or even that he had permission to have it. Moreover, standing generally requires a showing of some combination of the following factors: defendant's status (visitor, overnight guest, relative); the length, purpose and frequency of defendant's stays at the premises; possession of a key; and the presence of any belongings or contribution to expenses (*see, e.g., People v Rodriguez, supra*, 69 NY2d, at 162-163; *People v Ortiz*, 83 NY2d 840, 842-843; *People v Geraghty*, 212 AD2d 358, 359, *lv denied* 85 NY2d 938; *People v Ramos*, 206 AD2d 260). Under the circumstances in which defendant was found, the evidence regard-

ing proprietary interest in the apartment and his admitted residence (*see, People v Singleton*, 238 AD2d 146, *lv denied* 90 NY2d 911), the unexplained possession of a key and failure to admit the police, without more, simply do not satisfy defendant's burden. While defendant attributes significance to defendant's "refusal" to open the door to the police as indicia of his dominion and control, this argument is undermined by the fact that it was Encarnacion who eventually opened the door and "consented" to their entry.

Contrary to defendant's claim, our decisions in *People v Ramos* (*supra*), and *People v Fuentes-Borda* (186 AD2d 405) do not compel a different result. In *Ramos*, in stark contrast to here, defendant had a reasonable expectation of privacy in his mother's home, where he not only possessed a key and frequently stayed there but also was expected to check on the house. In *Fuentes-Borda*, all we held was that the court should have conducted a hearing where, over a period of hours, the police observed defendant go back and forth between two apartments, using a key both to enter and then secure one apartment, and removing baggage. In the instant case, defendant's possession of the key entitled him to a hearing, but, as noted at the outset, he was nonetheless obligated to establish standing at the hearing (*see also, People v Delgado, supra*). This, in our view, he failed to do, and, accordingly, the motion to suppress should have been denied. Concur—Sullivan, J. P., Milonas and Rubin, JJ.

Rosenberger, J., dissents in a memorandum as follows: The majority today ignores the principle that the findings of a judicial fact finder are entitled to great deference, rejects the "law of the case" doctrine and ignores the stated purpose of the exclusionary rule. I would reverse defendant's conviction and dismiss the indictment. Defendant was entitled to a reasonable expectation of privacy in the apartment that the police unlawfully entered and searched, and thus had standing to contest that illegal police conduct.

The hearing established the illegality of the police conduct in entering the apartment and that the defendant had a key to the apartment and was present in the apartment behind a closed door, when the police attempted to, and finally did, gain entry. Further, he did not open the door for 10 to 15 minutes after loudly and continuously being ordered by the police to do so. The door was eventually opened by another person in the apartment.

In our original decision remanding the matter for a *Mapp* hearing, we held that "[a]lthough it is conceded that the defen-

dant did not have property rights in the apartment, his possession of a key exhibits a degree of dominion and control over the apartment such as to legitimize his expectation of privacy and thereby confer standing upon him to contest the officers' actions" (*People v Jose*, 239 AD2d 172, 173). On remand, the hearing court felt itself bound by this Court's conclusion that defendant's factual allegations, if true, were sufficient to confer standing. The hearing court found that our holding did not preclude the People from litigating the "accuracy of the defendant's factual allegations that he possessed those keys". Since the hearing court determined that factual issue in defendant's favor, the question of standing should be considered settled.

The language of our original opinion explicitly contradicts the majority's strained argument that we never even suggested that defendant had standing when we remanded this case. We did not merely hold that defendant had made sufficient allegations to warrant a hearing on the issue of *standing*. We held that if the facts were as he alleged, these sufficed to *"confer standing"* on defendant so as to warrant a hearing on the legality of the search. The majority's *ipse dixit* attempt to circumvent our own binding statements of law is not supported by anything in the history of this case or the precedents of this Court.

The matter does not, however, end there. The majority fails to show the proper deference to the hearing court's own independent determination, relying on the evidence before it, that defendant had standing based on an expectation of privacy in the apartment (*see, People v Keegan*, 213 AD2d 282, *lv denied* 86 NY2d 737). "[T]he fact findings of a suppression court are entitled to great deference and will not be disturbed unless clearly erroneous" (*People v Brown*, 234 AD2d 211, 213, *affd* 91 NY2d 854). The hearing court's findings were not in error.

A defendant has standing to contest an illegal search when he manifests an expectation of privacy and that expectation is objectively reasonable (*People v Ramirez-Portoreal*, 88 NY2d 99, 108). This defendant's subjective expectation of privacy was manifested by the fact that he was in an apartment behind a locked door to which he possessed a key, and refused entry to the officers for 10 to 15 minutes. Factors supporting the reasonableness of his expectation include whether he took precautions to protect his privacy and whether he had the right to exclude others (*People v Rodriguez*, 69 NY2d 159, 162), such as by locking the door of the apartment in question (*People v Ramos*, 206 AD2d 260, 261; *see also, People v Fuentes-Borda*, 186 AD2d 405, 406). Possession of a key is an important factor

in favor of his claim (*see, e.g., People v Robertson*, 48 NY2d 993, 994; *People v Johnson*, 216 AD2d 185, 187). There are no grounds for us to conclude that the hearing court erred in deciding this issue in defendant's favor.

The majority's opinion also ignores the "law of the case" principle. So long as the facts are the same, our determination of a particular point becomes the law of the case, such that we must abide by that decision in a subsequent appeal of the same case (*People v Taylor*, 87 AD2d 771, 773, *affd* 57 NY2d 729), "except in extraordinary circumstances" (*Politi v Irvmar Realty Corp.*, 13 AD2d 469) such as a change in the applicable law since the first appeal was decided (*People v Williams*, 188 AD2d 573, 574, *lv denied* 81 NY2d 894). No such circumstances exist here. Having already decided that possession of a key under the circumstances proven at the hearing would suffice to confer standing, this Court may not now reach the opposite conclusion based on the same facts (*People v Taylor, supra*).

The purpose of the exclusionary rule, however unpopular it may be, is to deter unconstitutional police conduct. "[T]he Fourth Amendment was intended to secure the citizen in person and property against unlawful invasion of the sanctity of his home by officers of the law acting under legislative or judicial sanction. * * * To sanction such proceedings would be to affirm by judicial decision a manifest neglect if not an open defiance of the prohibitions of the Constitution, intended for the protection of the people against such unauthorized action" (*Weeks v United States*, 232 US 383, 394). This goal is so important that it is deemed to justify the extreme step of suppressing the unlawfully seized evidence (*Mapp v Ohio*, 367 US 643, 654; *Weeks v United States, supra*), even when the result is that the defendant cannot be convicted (*Standefer v United States*, 447 US 10, 23). In the case at bar, where the People no longer dispute the hearing court's finding that the police actions were unlawful, the public policy behind the rule is subverted by the majority's unreasonably restrictive view of defendant's standing to contest the search, particularly when this view is contradicted by both the hearing court's findings and this Court's own previous words on the subject.

Accordingly, I respectfully dissent.