■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GUY ZAPPULLA, Appellant. [724 NYS2d 433] —Appeal by the defendant from (1) a judgment of the Supreme Court, Kings County (Kreindler, J.), rendered March 30, 1999, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence, and (2) a separate judgment of the same court, rendered March 31, 1999, convicting him of escape in the second degree, upon his plea of guilty, and imposing sentence. The appeals bring up for review the denial, after a hearing (Marrus, J.), of those branches of the defendant's omnibus motion which were to suppress physical evidence and certain statements he made to law enforcement authorities.

Ordered that the judgments are affirmed.

The defendant was arrested at approximately 12:30 A.M. on March 17, 1998, in the second-floor hallway of the Golden Gate Inn in Brooklyn after his girlfriend filed a complaint that he had stolen a fur coat and jewelry from her. At approximately 1:20 A.M., after being advised of his *Miranda* rights (*see, Miranda v Arizona,* 384 US 436), he refused to talk about the theft, although he did talk about other matters. Before transporting the defendant to central booking, the police searched him and found a key to room 234 at the Golden Gate Inn. Detectives went to the motel and discovered that the defendant was not the registered occupant. When no one answered the door to room 234 and the detectives heard a television blaring loudly inside the room, they asked the manager to enter and see if the occupants were safe. The manager unlocked the door, went in, and found only a fur coat. Based on this information, the police obtained a search warrant for the room. Upon executing the warrant, they found the corpse of Jennifer Scarpati a/k/a Imparato (hereinafter Scarpati) under

one of the beds. Thereafter, at approximately 1:15 A.M. on March 18, 1998, the police interrogated the defendant about the homicide, without readvising him of his *Miranda* rights. He confessed to the police that he choked Scarpati. The defendant moved unsuccessfully to suppress the physical evidence recovered from the motel room and his confession.

The defendant argues that in view of the approximately 24-hour interval between the first interrogation regarding the theft of items from his girlfriend and the second interrogation regarding Scarpati's murder, an unrelated crime, the police were obligated to issue him a full set of *Miranda* warnings before questioning him about the Scarpati case. The defendant contends that since the police failed to properly readvise him of his *Miranda* rights, his confession should have been suppressed. He claims that the physical evidence recovered from the motel room should also have been suppressed on the ground, *inter alia*, that the search warrant was improperly obtained.

The hearing court properly refused to suppress the evidence seized as a result of the search of the motel room. The defendant lacked standing to challenge the search as he failed to establish that he had a reasonable expectation of privacy in the motel room (*see generally, People v Rodriguez,* 69 NY2d 159; *People v Lerhinan,* 90 AD2d 74). His possession of a key to the room at the time of his arrest was insufficient to confer standing (*see, People v Scott,* 273 AD2d 76; *People v Jose,* 252 AD2d 401, *affd* 94 NY2d 844; *see also, United States v Gordon,* 168 F3d 1222, *cert denied* 572 US 1030), particularly as the room was not registered to him, and, in fact, he was registered in a different room.

The hearing court should have suppressed the defendant's confession to Scarpati's murder. The general rule is that "where a person in police custody has been issued *Miranda* warnings and voluntarily and intelligently waives those rights, it is not necessary to repeat the warnings prior to subsequent questioning within a reasonable time thereafter, so long as the custody has remained continuous" (*see, People v Glinsman,* 107 AD2d 710, *lv denied* 64 NY2d 889, *cert denied* 472 US 1021). The defendant correctly contends that no reported case in this state has held that a 24-hour interval in questioning is reasonable. Indeed, in the reported Appellate Division cases where suppression was denied, the longest interval between the issuance of the *Miranda* warnings and the subsequent interrogation has been less than 12 hours (*see, People v Starks,* 139 AD2d 681 [9½ hours]; *People v Baker,* 208 AD2d 758 [8 hours]; *People v*

*Thomas,* 233 AD2d 347 [7 hours]; *People v Cody,* 260 AD2d 718 [6 hours]; *People v McCoy,* 122 AD2d 957 [5 hours]; *People v Kemp,* 266 AD2d 887 [4 hours]; *People v Lagano,* 191 AD2d 646 [2 hours]). On the other hand, in two cases where the interval between the *Miranda* warnings and the subsequent interrogation was 12 hours or more, the confessions were suppressed (*see, People v Breland,* 145 AD2d 639 [12 hours]; *People v Dow,* 129 AD2d 535 [17 hours]).

This is not to suggest that 12 hours is per se unreasonable, but merely to highlight the fact that under the circumstances of this case, the 24-hour gap between the issuance of *Miranda* warnings to the defendant and his second interrogation was not a reasonable time. The defendant spent much of March 17, 1998, at the hospital being treated for injuries sustained in a car accident on the way to central booking and therefore, was not in a continuous custodial environment. Moreover, the second interrogation concerned a crime unrelated to that for which he was initially arrested. Thus, the hearing court should have granted the defendant's motion to suppress his confession.

However, the failure to suppress the defendant's confession does not require reversal in this case, in view of the overwhelming evidence of his guilt. A witness testified that the defendant was with Scarpati in room 234 at the Golden Gate Inn in the days and hours immediately before the crime. Surveillance videotape from the motel showed the defendant leaving and then reentering the motel shortly before the police arrived and arrested him on March 17, 1998. Expert testimony indicated that Scarpati's death occurred sometime between the evening of March 16 and the early morning of March 17. The key to Room 234, the room where Scarpati's body was found, was recovered from the defendant's person after his arrest. D.N.A. testing of blood found on the defendant's clothing revealed that the blood was Scarpati's. In addition, the defendant admitted to an inmate, who was incarcerated with the defendant pending trial, that when he choked Scarpati "blood came out." In light of this overwhelming evidence, there is no reasonable possibility that the error of admitting the defendant's statement into evidence might have contributed to his conviction (*see People v Crimmins,* 36 NY2d 230, 237; *People v Nisbett,* 225 AD2d 801, 802; *People v Carey,* 156 AD2d 983).

Accordingly the judgments are affirmed. O'Brien, J. P., S. Miller, Friedmann and Townes, JJ., concur.