Guy ZAPPULLA (99–A–2233), Petitioner,

v.

**People of the State of NEW YORK, Respondent.**

Nos. 02–CV–4934 (JBW), 03–MISC–0066 (JBW).

United States District Court, E.D. New York.

Sept. 30, 2003.

Guy Zappulla, Comstock, NY, pro se.

Camille O'Hara Gillespie, Kings County District Attorneys Office, Brooklyn, NY, for Respondent.

## MEMORANDUM, JUDGMENT & ORDER

WEINSTEIN, Senior District Judge.

Petitioner was tried for strangling a woman and stuffing her corpse under the bed of a motel room. Evidence of petitioner's guilt was overwhelming; it included his confession to the crime. The Appellate Division of the New York Supreme Court found that his confession was obtained without *Miranda* warnings and in violation of his Fifth Amendment privilege against self-incrimination. Because this error was harmless, however, petitioner is not entitled to the writ.

The petition for a writ of habeas corpus is denied. No hearing on this matter is necessary. This memorandum briefly addresses petitioner's claims.

### I. Facts and Procedural History

The statement of the facts of the case are derived largely from the decision of the Appellate Division affirming petitioner's conviction.

Petitioner was arrested at approximately 12:30 a.m. on March 17, 1998, in the second-floor hallway of the Golden Gate Inn in Brooklyn after his girlfriend filed a complaint that he had stolen a fur coat and jewelry from her. At approximately 1:20 a.m., after being advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), he refused to talk about the theft, although he did talk about other matters. Before transporting petitioner to central booking, the police searched him and found a key to room 234 at the Golden Gate Inn. Detectives went to the motel and discovered that petitioner was not the registered occupant.

When no one answered the door to room 234 and the detectives heard a television blaring loudly inside the room, they asked the manager to enter and see if the occupants were safe. The manager unlocked the door, went in, and found only a fur coat. Based on this information, the police obtained a search warrant for the room. Upon executing the warrant, they found the corpse of Jennifer Scarpati under one of the beds. Thereafter, at approximately 1:15 a.m. on March 18, 1998, twenty four hours after they initially interviewed petitioner concerning the robbery of a fur coat and jewelry, the police interrogated petitioner about the homicide without readvising him of his *Miranda* rights. After petitioner stated that he wanted a lawyer, a detective told him, "If you want a lawyer, we can't speak to you any further." Feb. 9, 1999 Hearing Tr. at 83. Petitioner subsequently confessed to the police that he choked Scarpati. Petitioner moved unsuccessfully to suppress the physical evidence recovered from the motel room and his confession.

Evidence introduced against petitioner at trial included his confession to police; a witness's testimony that petitioner was with Scarpati in room 234 of the motel immediately before the crime; videotape from the motel showing petitioner coming to and from the motel shortly before his arrest; the key to room 234, where Scarpati's body was found, on petitioner's person; DNA testing that showed that blood found on petitioner's clothing was Scarpati's; and petitioner's admission to another inmate that he had choked Scarpati.

Petitioner was convicted of second degree murder. He also pled guilty to second degree escape. He was sentenced to 25 years to life in prison.

The Appellate Division affirmed his conviction on direct appeal. Leave to appeal to the New York Court of Appeals was denied. No state collateral proceedings were initiated.

In his application for a writ of habeas corpus, petitioner claims that (1) the search warrant that led to the discovery of physical evidence in the motel room was improperly obtained in violation of the Fourth Amendment and should have been suppressed; and (2) his confession should have been suppressed because police failed to readvise him of his *Miranda* rights.

## II. AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." *Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir.2001) (quoting *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir.1999)). Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J., concurring and writing for the majority in this part). Under the "unreasonable application" clause, "a federal

habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495. Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411, 120 S.Ct. 1495. In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000) (internal quotation marks omitted).

■ "[F]ederal law, as determined by the Supreme Court, may as much be a generalized standard that must be followed, as a bright-line rule designed to effectuate such a standard in a particular context." *Overton v. Newton,* 295 F.3d 270, 278 (2d Cir.2002); *see also Yung v. Walker,* 341 F.3d 104 (2d Cir.2003) (amended opinion) (district court's habeas decision that relied on precedent from the court of appeals is remanded for reconsideration in light of "the more general teachings" of Supreme Court decisions). The Court of Appeals for the Second Circuit has also indicated that habeas relief may be granted if a state court's decision was contrary to or an unreasonable application of "a reasonable extension" of Supreme Court jurisprudence. *Torres v. Berbary,* 340 F.3d 63, 72 (2d Cir.2003). Determination of factual issues made by a state court "shall be presumed to be correct," and the applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III. Exhaustion

In the past, a state prisoner's federal habeas petition had to be dismissed if the prisoner did not exhaust available state remedies as to any of his federal claims. *See Rose v. Lundy,* 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). "This exhaustion requirement is … grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson,* 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The exhaustion requirement requires the petitioner to have presented to the state court "both the factual and legal premises of the claim he asserts in federal court." *Daye v. Attorney General,* 696 F.2d 186, 191 (2d Cir.1982) (en banc).

Pursuant to AEDPA, a district court may now, in its discretion, *deny* on the merits habeas petitions containing unexhausted claims—so-called "mixed petitions." *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."). In addition, the state may waive the exhaustion requirement, but a "State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." *Id.* § 2254(b)(3); *see also Ramos v. Keane,* No. 98 CIV. 1604, 2000 WL 12142, at *4 (S.D.N.Y.2000) (state's failure to raise exhaustion requirement does not waive the issue).

## IV. Procedural Bar

■ A federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate

state procedural rule, "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546. In determining whether a procedural bar is sufficient to preclude habeas review, a federal court must consider as "guideposts" the following:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

*Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir.2003) (quoting *Lee v. Kemna*, 534 U.S. 362, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002)).

■ If a state court holding contains a plain statement that a claim is procedurally barred then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative. *See Harris v. Reed*, 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) ("a state court need not fear reaching the merits of a federal claim in an *alternative* holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision).

■ When a state court says that a claim is "not preserved for appellate review" and then rules "in any event" on the merits, such a claim is not preserved. *See Glenn v. Bartlett*, 98 F.3d 721, 724–25 (2d Cir.1996). When a state court "uses language such as 'the defendant's remaining contentions are either unpreserved for appellate review or without merit,' the validity of the claim is preserved and is subject to federal review." *Fama v. Comm'r of Corr. Services*, 235 F.3d 804, 810 (2d Cir. 2000). Where "a state court's ruling does not make clear whether a claim was rejected for procedural or substantive reasons and where the record does not otherwise preclude the possibility that the claim was denied on procedural grounds, AEDPA deference is not given, because we cannot say that the state court's decision was on the merits." *Su v. Filion*, 335 F.3d 119, 126 n. 3 (2d Cir.2003) (citing *Miranda v. Bennett*, 322 F.3d 171, 178 (2d Cir.2003)). This congeries of holdings leaves it an open question whether there are "situations in which, because of uncertainty as to what the state courts have held, no procedural bar exists and yet no AEDPA deference is required." *Id.*

## V. Ineffective Assistance of Counsel

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right to counsel is "the right to *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (emphasis added). The Supreme Court has explained that in giving meaning to this requirement we must be guided by its purpose—"to ensure a fair trial"—and that therefore the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail on a Sixth Amendment claim, a petitioner must prove both that counsel's representation "fell below an ob-

jective standard of reasonableness" measured under "prevailing professional norms," *id.* at 688, 104 S.Ct. 2052, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. 2052. *See also Wiggins v. Smith,* 539 U.S. ——, ——, 123 S.Ct. 2527, 2529, 156 L.Ed.2d 471 (2003); *United States v. Eyman,* 313 F.3d 741, 743 (2d Cir.2002). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

■ The performance and prejudice prongs of *Strickland* may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Id.* at 697, 104 S.Ct. 2052. In evaluating the prejudice suffered by a petitioner as a result of counsel's deficient performance, the court looks to the "cumulative weight of error" in order to determine whether the prejudice "reache[s] the constitutional threshold." *Lindstadt v. Keane,* 239 F.3d 191, 202 (2d Cir.2001). The court must also keep in mind that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland,* 466 U.S. at 696, 104 S.Ct. 2052. "The result of a [criminal] proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Purdy v. Zeldes,* 337 F.3d 253, 260 (2d Cir.2003) (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052). Ineffective assistance may be demonstrated where counsel performs competently in some respects but not in others. *See Eze v. Senkowski,* 321 F.3d 110, 112 (2d Cir.2003).

As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland,* 466 U.S. at 690–91, 104 S.Ct. 2052. Counsel, in other words, "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691, 104 S.Ct. 2052. Where counsel fails to make a reasonable investigation that is reasonably necessary to the defense, a court must conclude that the decision not to call an expert cannot have been based on strategic considerations and will thus be subject to review under *Strickland's* prejudice prong. *See Pavel v. Hollins,* 261 F.3d 210, 223 (2d Cir.2001) (counsel ineffective in a child sexual abuse case where his failure to call a medical expert was based on an insufficient investigation); *Lindstadt,* 239 F.3d at 201 (same). The court of appeals for the Second Circuit has recently gone so far as to imply that all of counsel's significant trial decisions must be justified by a sound strategy—a significant raising of the bar that would appear to require an unrealistic degree of perfection in counsel. *See Eze,* 321 F.3d at 136 (remanding to district court for factual hearing because it was "unable to assess with confidence whether strategic considerations accounted for ... counsel's decisions").

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

■ Each factual claim made in support of an allegation of ineffective assistance of counsel must be fairly presented to a state

court before a federal habeas court may rule upon it. *See Rodriguez v. Hoke*, 928 F.2d 534, 538 (2d Cir.1991) (dismissing petition as unexhausted where petitioner's claim of ineffective assistance of counsel alleged more deficiencies before the habeas court than were presented to the state court, because "[t]he state courts should have been given the opportunity to consider all the circumstances and the cumulative effect of all the claims as a whole" (quotation omitted)). Where an additional factual claim in support of the ineffective-assistance allegation merely "supplements" the ineffectiveness claim and does not "fundamentally alter" it, dismissal is not required. *Caballero v. Keane*, 42 F.3d 738, 741 (2d Cir.1994). Each significant factual claim in support of an ineffective-assistance allegation premised on appellate counsel's deficient performance must be exhausted. *See Word v. Lord*, No. 00 CIV. 5510, 2002 WL 32145769, *11 (S.D.N.Y. Mar. 18, 2002) (Magistrate's Report and Recommendation).

■■■ Although the *Strickland* test was formulated in the context of an ineffective assistance of trial counsel claim, the same test is used with respect to claims of ineffective appellate counsel. *See Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir.1992). Appellate counsel does not have a duty to advance every nonfrivolous argument that could be made, *see Jones v. Barnes*, 463 U.S. 745, 754, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker," *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir.1994). Either a federal or a state law claim that was improperly omitted from an appeal may form the basis for an ineffective assistance of appellate counsel claim, "so long as the failure to raise the state ... claim fell outside the

wide range of professionally competent assistance." *Id.* (quotations omitted).

## VI. Certificate of Appealability

■■■ A certificate of appealability may be granted with respect to any one of petitioner's claims only if petitioner can make a substantial showing of the denial of a constitutional right. **Petitioner has a right to seek a certificate of appealability from the Court of Appeals for the Second Circuit.** *See* 28 U.S.C. § 2253; *Miller-El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). The court has taken into account the rule of section 2253(c)(3) of Title 28 of the United States Code that a certificate of appealability "shall indicate which specific issue or issues satisfy the [substantial showing of the denial of a constitutional right] required by paragraph (2)." *See also Shabazz v. Artuz*, 336 F.3d 154, 160 (2d Cir. 2003).

This opinion complies with *Miranda v. Bennett*, 322 F.3d 171, 175–77 (2d Cir. 2003), and Rule 52 of the Federal Rules of Civil Procedure. No other issue open to consideration by this court has merit. *See Sumner v. Mata*, 449 U.S. 539, 548, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) ("a court need not elaborate or give reasons for rejecting claims which it regards as frivolous or totally without merit").

## VII. Analysis of Claims

### A

Petitioner first claims that the search warrant that led to the discovery of physical evidence in the motel room was improperly obtained in violation of the Fourth Amendment and should have been suppressed. A suppression hearing was conducted before trial. After petitioner's conviction he raised this claim before the Appellate Division, where it was rejected:

The hearing court properly refused to suppress the evidence seized as a result of the search of the motel room. The defendant lacked standing to challenge the search as he failed to establish that he had a reasonable expectation of privacy in the motel room. His possession of a key to the room at the time of his arrest was insufficient to confer standing, particularly as the room was not registered to him, and, in fact, he was registered in a different room.

*People v. Zappulla,* 282 A.D.2d 696, 724 N.Y.S.2d 433, 435–36 (2d Dep't 2001) (citations omitted).

 Under *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), a federal habeas court is barred from reviewing the merits of a Fourth Amendment claim so long as the state has provided petitioner with the opportunity for a full and fair litigation of his claim. Fourth Amendment claims in habeas petitions may be undertaken "in only one of two instances: (a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley,* 975 F.2d 67, 70 (2d Cir.1992).

Petitioner was afforded a full and fair opportunity to litigate his Fourth Amendment claim, which as the Appellate Division's analysis suggests was a weak one. Further review in this court is precluded.

### B

Petitioner claims that his statement to police confessing to the murder of Scarpati was taken in violation of his constitutional right to counsel and that he requires a new trial. This claim was exhausted in the state courts and adjudicated on the merits.

Review proceeds under the deferential standards of AEDPA.

 The Appellate Division agreed with petitioner that there was a *Miranda* violation, highlighting the fact that twenty-four hours elapsed between interrogations and that the crimes about which petitioner was being questioned were different:

The hearing court should have suppressed the defendant's confession to Scarpati's murder. The general rule is that "where a person in police custody has been issued *Miranda* warnings and voluntarily and intelligently waives those rights, it is not necessary to repeat the warnings prior to subsequent questioning within a reasonable time thereafter, so long as the custody has remained continuous" (*see, People v. Glinsman,* 107 A.D.2d 710, 484 N.Y.S.2d 64, *lv denied* 64 N.Y.2d 889, 487 N.Y.S.2d 1036, 476 N.E.2d 1013, *cert denied* 472 U.S. 1021, 105 S.Ct. 3487, 87 L.Ed.2d 621). The defendant correctly contends that no reported case in this state has held that a 24–hour interval in questioning is reasonable. Indeed, in the reported Appellate Division cases where suppression was denied, the longest interval between the issuance of the *Miranda* warnings and the subsequent interrogation has been less than 12 hours (*see, People v. Starks,* 139 A.D.2d 681, 527 N.Y.S.2d 358 (2d Dep't 1988) [9½ hours]; *People v. Baker,* 208 A.D.2d 758, 617 N.Y.S.2d 798 (2d Dep't 1994) [8 hours]; *People v. Thomas,* 233 A.D.2d 347, 649 N.Y.S.2d 817 (2d Dep't 2001) [7 hours]; *People v. Cody,* 260 A.D.2d 718, 689 N.Y.S.2d 245 (3d Dep't 1999) [6 hours]; *People v. McCoy,* 122 A.D.2d 957, 506 N.Y.S.2d 103 (2d Dep't 1986) [5 hours]; *People v. Kemp,* 266 A.D.2d 887, 698 N.Y.S.2d 140 (4th Dep't 1999) [4 hours]; *People v. Lagano,* 191 A.D.2d 646, 595 N.Y.S.2d 115 (2d Dep't 1993) [2 hours] ). On the

other hand, in two cases where the interval between the *Miranda* warnings and the subsequent interrogation was 12 hours or more, the confessions were suppressed (*see, People v. Breland,* 145 A.D.2d 639, 536 N.Y.S.2d 479 (2d Dep't 1988) [12 hours]; *People v. Dow,* 129 A.D.2d 535, 514 N.Y.S.2d 735 (1st Dep't 1987) [17 hours] ).

This is not to suggest that 12 hours is *per se* unreasonable, but merely to highlight the fact that under the circumstances of this case, the 24 hour gap between the issuance of *Miranda* warnings to the defendant and his second interrogation was not a reasonable time. The defendant spent much of March 17, 1998, at the hospital being treated for injuries sustained in a car accident on the way to central booking and therefore, was not in a continuous custodial environment. Moreover, the second interrogation concerned a crime unrelated to that for which he was initially arrested. Thus, the hearing court should have granted the defendant's motion to suppress his confession.

*Zappulla,* 724 N.Y.S.2d at 435–36.

Respondent suggests that because the Appellate Division relied on state case law to establish that *Miranda* had been violated and because Supreme Court precedent would not have dictated the result reached by the Appellate Division, this court should give no deference to it. The irony of respondent arguing that AEDPA deference is not owed to the Appellate Division's resolution of this federal claim is not lost on this court. Suffice to say that this court agrees with the Appellate Division that petitioner's *Miranda* rights were violated.

Where a state court has found constitutional error of the trial type to be harmless, a federal court may grant the writ of habeas corpus only if it determines that the error "had substantial and injurious effect or influence in determining the jury's verdict," and that it resulted in "actual prejudice." *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). The Supreme Court has held that even upon a finding that a confession has been coerced a habeas court must conduct a harmless error analysis. *See Arizona v. Fulminante,* 499 U.S. 279, 312, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).

When a confession to a crime has been improperly admitted into evidence because it was obtained in violation of a defendant's right to counsel, the error in admitting the confession should not ordinarily be deemed harmless absent a strong showing by the state that petitioner's guilt would have been assured based solely on the other evidence presented at trial. Unlike any other form of evidence—eyewitness testimony and DNA included—a confession to a crime is uniquely persuasive to a jury. *See, e.g.,* Barry Scheck et al., *Actual Innocence: Five Days to Execution and Other Dispatches from the Wrongly Convicted* 92 (2000) ("73 percent of jurors will vote to convict even when admissions have been repudiated by the defendant and contradicted by the physical evidence"); *Cruz v. New York,* 481 U.S. 186, 195, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987) (defendant's confession is "probably the most probative and damaging evidence that can be admitted against him") (White, J., dissenting); *Bruton v. United States,* 391 U.S. 123, 140, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) (confession is so damaging that a jury should not be expected to ignore it even if told to do so) (White, J., dissenting); *Fulminante,* 499 U.S. at 292, 111 S.Ct. 1246 ("it is impossible to know what credit and weight the jury gave to the confession") (White, J., dissenting).

"Of course an involuntary confession may have a more dramatic effect on the course of a trial than do other trial errors—in particular cases it may be devastating to a defendant—but this simply means that a reviewing court will conclude in such a case that its admission was not harmless error." *Fulminante*, 499 U.S. at 312, 111 S.Ct. 1246.

■ Where the State asserts that a trial error of the instant type is harmless in light of the overwhelming evidence of a defendant's guilt—a routine assertion that is often inaccurate and sometimes laughably false—special care on the part of a reviewing court is warranted. In the present case, respondent's assertion that the evidence of petitioner's guilt was overwhelming—even leaving aside his confession to police—is a fair characterization. The Appellate Division reasonably explained why it deemed the error to be harmless:

> [T]he failure to suppress the defendant's confession does not require reversal in this case, in view of the overwhelming evidence of his guilt. A witness testified that the defendant was with Scarpati in room 234 at the Golden Gate Inn in the days and hours immediately before the crime. Surveillance videotape from the motel showed the defendant leaving and then reentering the motel shortly before the police arrived and arrested him on March 17, 1998. Expert testimony indicated that Scarpati's death occurred sometime between the evening of March 16 and the early morning of March 17. The key to Room 234, the room where Scarpati's body was found, was recovered from the defendant's person after his arrest. D.N.A. testing of blood found on the defendant's clothing revealed that the blood was Scarpati's. In addition, the defendant admitted to an inmate, who was incarcerated with the defendant pending trial, that when he choked Scarpati "blood came out." In light of this overwhelming evidence, there is no reasonable possibility that the error of admitting the defendant's statement into evidence might have contributed to his conviction.

*Zappulla*, 724 N.Y.S.2d at 436.

The Appellate Division's conclusions are sound. Under the circumstances of this case and in light of the overwhelming evidence of petitioner's guilty, there is no reasonable probability that the introduction of his un-*Mirandized* inculpatory statement had a substantial and injurious effect or influence in determining the jury's verdict or that it resulted in actual prejudice to petitioner. Habeas corpus relief is not warranted on this ground.

### C

In his memorandum of law in support of his application for a writ of habeas corpus, petitioner mentions that he wishes this court to address "in the interests of justice and judicial economy" unspecified ineffective assistance of counsel claims that were not exhausted in the state courts. Construing petitioner's claims liberally, *see Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), review of petitioner's claim that he was denied effective assistance of trial and appellate counsel will proceed, though based solely upon a review of matters on the record and without intent to deprive petitioner of an opportunity to litigate his ineffectiveness claims in the state court system.

■ Although the *Stone* doctrine precludes habeas corpus review of a Fourth Amendment claim where a defendant had a full and fair opportunity to litigate those claims in the state courts, ineffective assistance claims premised on counsel's failure to adequately represent a

defendant with respect to a Fourth Amendment claim is cognizable on habeas. *See Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). Petitioner's counsel was not ineffective in this regard. He successfully sought a pre-trial suppression hearing at which he vigorously cross-examined state witnesses concerning the validity of their search of the motel room. *See, e.g.,* Feb. 9, 1999 Hearing Tr. at 18–25, 64–87, 99–105, 130–41. Counsel sought to controvert the search warrant and forcefully argued to the court that petitioner's initial arrest was illegal and that all subsequently garnered evidence was fruit from the poisonous tree. *See id,* at 149–51. His representation was effective. Habeas corpus relief on this ground is not warranted.

■ Counsel also vigorously argued that petitioner's confession to police was obtained in violation of *Miranda* and petitioner's Fifth Amendment privilege against self-incrimination. *See* Feb. 9, 1999 Hearing Tr. at 151 162. Counsel was not ineffective in this regard. Habeas corpus relief on this ground is not warranted.

■ Counsel's performance at trial was competent. Faced with an overwhelming case of petitioner's guilt presented by the state, defense counsel's strategy of making brief opening remarks focusing on inconsistencies in the state's evidence was reasonable. Witnesses were effectively cross-examined in an effort to cast doubt on their recollection of events. The charge conference was handled effectively by counsel. Summation was as effective as could be expected given the weight of evidence offered against petitioner; counsel pointed out some time discrepancies, the fact that no ligature was found, and inconsistencies between petitioner's inculpatory statements to police and the physical evidence. Counsel was not ineffective at the trial stage of the proceedings. Habeas

corpus relief on this ground is not warranted.

■ Appellate counsel also provided competent representation. Petitioner's strongest argument was that his confession was obtained in violation of *Miranda.* Counsel made this argument successfully. That the error was deemed harmless by the Appellate Division cannot be imputed to the fault of appellate counsel; it was rather because evidence of petitioner's guilt was so overwhelming. Appellate counsel's choice to raise the *Miranda* issue instead of other, less plausible claims was strategically reasonable. Ineffective assistance of trial counsel claims would likely have failed as meritless. Habeas corpus relief is not warranted on petitioner's ineffective assistance of appellate counsel claim.

## VIII. Conclusion

The petition for a writ of habeas corpus is denied.

A certificate of appealability is granted with respect to petitioner's claim that the denial of his right to counsel in violation of *Miranda* had substantial and injurious effect or influence in determining the jury's verdict.

No certificate of appealability is granted with respect to any of petitioner's remaining claims, petitioner having made no substantial showing of the denial of a constitutional right.

SO ORDERED.