OPINION OF THE COURT
Donald P. DeRiggi, J.
The defendant was convicted after trial of murder in the second degree, depraved indifference to human life, inter alia.
Before the charge the defendant had requested that the jury be instructed pursuant to section 35.20 (2) and (3) of the Penal Law, justification in defense of a dwelling during a burglary, and the court refused to so instruct.
During the trial the evidence showed that the defendant and the deceased, Jeffrey Walters, had arranged the sale and purchase of a substantial amount of ecstasy at the defendant’s house, 20 Kelly Street, Valley Stream. The victim arrived and, when he showed the defendant the drugs, the defendant protested that he was being cheated. Defendant said that this *241 was certainly not 14,000 ecstasy pills and that not only was the quantity insufficient but that some of the pills were fake. The defendant testified that the victim then pushed him and a fight ensued. The defendant said the victim pushed him to the ground, the victim being on top of the defendant, when the defendant sprayed the victim in the eyes with pepper spray and then managed to get up, push the victim to the ground, face down, hit his face into the floor several times and then brought his foot down twice on the victim’s neck, thereby killing him.
The defendant requested and the jury was charged under the justification statute, section 35.15 of the Penal Law, on the use of deadly physical force. The court’s charge included the provisions of section 35.15 (2) (a), i.e., that the use of deadly physical force is permissible when one reasonably believes that the other person is using or is about to use deadly physical force.
With regard to the justification charge related to deadly physical force to terminate a burglary, the facts do show that the incident occurred in the defendant’s dwelling and while there was no evidence presented to show that the defendant directly ordered the victim out of his dwelling, there is a view of the evidence which shows that the victim began the aggressive acts by pushing or punching the defendant.
There are cases which have upheld burglary and felony murder convictions in which the defendant was initially invited into the dwelling. These decisions have held that the license or privilege to be present was automatically terminated by the subsequent criminal act of the defendant. (The felony murder convictions were based upon the existence of a burglary combined with a homicide.) (People v Brown, 111 AD2d 343 [2d Dept 1985]; People v Burnett, 205 AD2d 792 [2d Dept 1994]; People v DeLarosa, 172 AD2d 156 [1st Dept 1991].) The defendant argues that these and other cases establish the principle that a license or privilege to enter a dwelling is automatically terminated by the aggressor’s criminal act and that he is then “remaining unlawfully” in the dwelling and since he is committing a crime, in this case assault, he is actually therefore perpetrating a burglary, warranting the use of deadly force against him to terminate the burglary.
On the other hand there are appellate cases which hold that there is no automatic revocation of the license or privilege to be present in the dwelling upon the commission of a crime therein. (People v Insogna, 86 AD2d 979 [4th Dept 1982]; People v Miles, 85 AD2d 610 [2d Dept 1981].)
Perhaps the best and clearest language on this issue is found in a trial court decision, People v Crowell (122 Misc 2d 133 [Oswego County Ct 1983]). In that case, the defendant was *242 given permission to enter the premises for the purpose of painting it. The court found that the privilege to be within the premises is not negated by the formulation of a criminal intent or even the undertaking of a criminal action therein. The court went on to state that “the doctrine remains that a licensed or privileged entry or remaining is not transformed into an unlawful one upon the occurrence of criminal conduct on the part of the licensee. * * * A rule to the contrary would mean that an intoxicated house guest who loses his temper and intentionally smashes a vase becomes a burglar. Innumerable like examples can be imagined. Such is not the intent of the Legislature in creating the burglary statutes, all of which have trespassorial conduct as one essential element.” (Id. at 134-135 [citations omitted].)
The controlling law in this area is People v Godfrey (80 NY2d 860 [1992]). In that case, two individuals agreed to have a fight in the defendant’s residence. They had a fight. The defendant then told the victim to leave his house. The victim refused to leave and again attacked the defendant. The defendant shot the victim.
The Court held as follows:
“Section 35.20 (3) of the Penal Law authorizes a person to use deadly physical force against another person if he or she reasonably believes that such force is necessary to terminate a burglary of his or her own home * * * . The People contend that even if [the victim] could ‘technically’ be considered to have been committing a burglary when he was killed, defendant should nevertheless not be permitted to rely on section 35.20 (3) as authorizing his use of deadly physical force. Specifically, they maintain that an individual, who — like defendant— invites another onto his or her premises and then actively and willingly joins in that person’s criminal conduct should not be-permitted to kill that person merely because he or she does not promptly cease pursuing the criminal endeavor upon being ordered to leave the premises. * * *
“Section 35.20 (3) — as its legislative history makes clear — was intended to protect those individuals who suddenly find themselves the victim of an intrusion upon their premises by one bent on a criminal end * * * . There is, however, nothing in that provision’s legislative history or otherwise which suggests that it was also meant to protect one who — like defendant — invites another person *243 into his home, fully aware that such person intends to commit a crime once inside. Such an individual is no less responsible for any ensuing invasion of his or her own security then the would-be burglar, and therefore cannot claim the protections of section 35.20 (3).” (Supra at 862-863; see also People v Cox, 92 NY2d 1002 [1998]; People v Deis, 283 AD2d 911 [4th Dept 2001].)
The Godfrey case is parallel and similar to the case before this court. In both cases the defendant and the victim went to the defendant’s house for the purpose of committing a crime. In Godfrey, the defendant argued that he had at some point ordered the victim out of the house and when the victim again attacked him he shot the victim. In the Petronio case, the defendant did not order the victim out of the house but contends that the invitation was automatically terminated by the subsequent assault. Under either scenario, according to Godfrey, the defendant cannot avail himself of the justification statute permitting deadly physical force to be used to terminate a burglary. In both cases, the defendants were no less responsible for the ensuing invasion of their security than the would-be burglars and therefore cannot claim the protections of section 35.20 (3) of the Penal Law. Therefore, the defendant’s motion is denied.