■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MARK PETRONIO, Appellant. [825 NYS2d 99]—

Appeal by the defendant from a judgment of the Supreme Court, Nassau County (DeRiggi, J.), rendered July 24, 2002, convicting him of murder in the second degree, insurance fraud in the third degree, and tampering with physical evidence, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress his statements to law enforcement officials.

Ordered that the judgment is affirmed.

The defendant's contention that the evidence was legally insufficient to support a conviction of depraved indifference murder (*see* Penal Law § 125.25 [2]; *People v Payne*, 3 NY3d 266 [2004]) is unpreserved for appellate review (*see* CPL 470.05 [2]; *People v Kotsopoulos*, 18 AD3d 781 [2005], *lv denied* 5 NY3d 807 [2005]; *People v Jagoo*, 2 AD3d 750 [2003]) and, in any event, is without merit (*see People v Payne, supra* at 271-272; *People v Suarez*, 6 NY3d 202, 212-213 [2005]). Upon the exercise of our factual review power, we are satisfied that the verdict of guilt was not against the weight of the evidence (*see* CPL 470.15 [5]).

The defendant's argument that the Court of Appeals' formulation of depraved indifference murder is unconstitutionally vague is unpreserved for appellate review (*see* CPL 470.05 [2]; *People v Oliver*, 63 NY2d 973 [1984]; *People v Reyes*, 4 AD3d 541 [2004]; *People v Lambert*, 125 AD2d 495, 497 [1986]), and, in any event, is without merit (*see People v Cole*, 85 NY2d 990 [1995]).

We reject the defendant's contention that certain allegedly improper remarks made by the court during cross-examination require reversal. The Supreme Court's prompt and clear curative instruction alleviated any prejudice to the defendant (*see People v Hicks*, 301 AD2d 538 [2003], *affd* 2 NY3d 750 [2004]; *People v O'Garro*, 293 AD2d 763 [2002]).

Viewed in the light most favorable to the defendant (*see People v Padgett*, 60 NY2d 142 [1983]; *People v Watts*, 57 NY2d 299

[1982]), the evidence was insufficient to establish that he killed the victim while the victim was attempting to commit a burglary (*see* Penal Law § 35.20; *People v Godfrey*, 80 NY2d 860 [1992]). The Supreme Court, therefore, properly denied the defendant's request for a charge on the justifiable use of deadly physical force to stop the commission of a burglary (*see* Penal Law § 35.20 [3]; *People v Godfrey, supra* at 862-863).

Contrary to the defendant's contention, his second written confession, made 25 hours after the administration of *Miranda* warnings (*see Miranda v Arizona*, 384 US 436 [1966]), was not per se involuntary. The court generally must look to the totality of the circumstances to determine the voluntariness of an inculpatory statement (*see People v Anderson*, 42 NY2d 35, 38 [1977]). Where, as here, a person in police custody was issued *Miranda* warnings and waived those rights voluntarily and intelligently, "it is not necessary to repeat the warnings prior to subsequent questioning within a reasonable time thereafter, so long as the custody has remained continuous" (*People v Glinsman*, 107 AD2d 710 [1985], *cert denied* 472 US 1021 [1985]; *see People v Santalis*, 302 AD2d 614 [2003]). The factors to be examined in determining the totality of the circumstances surrounding a defendant's confession include the "duration and conditions of detention, the attitude of the police toward the defendant, and the age, physical state and mental state of the defendant" (*People v Baker*, 208 AD2d 758, 759 [1994]; *see People v McAvoy*, 142 AD2d 605 [1988]; *People v Ross*, 134 AD2d 298, 299 [1987]).

Here, during his continuous and uninterrupted detention, the defendant waived his *Miranda* rights and confessed to killing the victim. The defendant then proceeded over the ensuing hours to spin a series of differing tales describing the manner of the killing and disposal of the body. He first described a struggle over a gun, ending in throwing the body over the Outerbridge Crossing. He then changed his story, indicating that the body had been disposed of in a dumpster behind a McDonald's on Cross Bay Boulevard. Finally, the defendant stated that he beat the victim to death and buried the body in the backyard of a house he owned in Patchogue. During that time, the police obtained a search warrant to search the defendant's home and investigated the defendant's varied assertions. The defendant was provided with food and the opportunity to use toilet facilities, as well as opportunities to rest in solitude. Under these circumstances, the passage of a total of 25 hours from the time the police administered *Miranda* warnings to the time of the defendant's final statement was not unreasonable.

The defendant's remaining contentions are either unpreserved for appellate review, or, in any event, are without merit. Miller, J.P., Santucci, Goldstein and Dillon, JJ., concur. [*See* 192 Misc 2d 240 (2002).]