OPINION OF THE COURT
Mastín Marcus, J.
On May 30 and 31 and June 14, 2017, I conducted a Huntley hearing.* At the hearing, Detective Kristin Flood of the New York City Police Department testified for the People. The defendant called no witnesses. For the reasons set forth in this decision, I find that the People have met their burden of proving beyond a reasonable doubt that the defendant’s statements were voluntarily made. (People v Thomas, 22 NY3d 629, 641 [2014]; People v Huntley, 15 NY2d 72, 78 [1965]; People v Velez, 211 AD2d 524, 524 [1st Dept 1995].) Accordingly, the defendant’s motion to suppress the statements he made to the police is denied.
On August 10, 2013, Detective Flood was assigned to the investigation of the shooting death of Clayton Wright the day before at 4026 Paulding Avenue in the Bronx. Droplets of blood were found in the hallway outside of the apartment where the body was recovered and a sample of that blood was submitted for DNA testing. On November 2, 2013, Detective Flood was notified that the testing had resulted in a “hit” that made the defendant a suspect in the homicide. As a result, Detective Flood issued an “I-card” for the defendant, and on August 19, 2014, he was informed that the defendant was being held in Westchester County on an outstanding Bronx County warrant. Accompanied by Detective Crissfield, Detective Flood traveled to Westchester County and brought the defendant back to the 47th Precinct in the Bronx that same day.
At issue in the hearing were the admissibility of three custodial statements the defendant made after he was brought to the 47th Precinct on August 19, 2014: a written statement he made at 12:15 p.m.; a video statement he made beginning at 2:50 p.m. and ending at 3:35 p.m.; and a second video statement he made beginning at 4:30 p.m. and ending at 5:39 p.m. Also at issue was an oral statement he made at the Bronx Homicide Task Force office at 12:20 a.m. on August 21, 2014.
The People established at the hearing that before each of the defendant’s August 19th statements, he was read his Miranda *328 warnings, acknowledged that he understood them, and voluntarily agreed to waive them and make a statement. The administration of the Miranda warnings and the defendant’s waiver of his Miranda rights appear at the beginning of the recordings of the defendant’s two video statements. As the defendant concedes in a memorandum of law his attorney submitted after the hearing, “there is no doubt that Mr. White knowingly and intelligently waived his privilege against self-incrimination and his right to counsel.”
Pursuant to the Police Department protocol in effect at the time, the defendant’s written statement, which preceded his two video statements, was not video recorded. However, Detective Flood testified that he asked each of the Miranda questions, and the defendant responded to each one affirmatively, thereby indicating that he understood his rights as Detective Flood read them to him off the Miranda form, and that he was willing to waive them and to make a statement. The form itself was introduced into evidence. On it, the defendant acknowledged his oral responses by placing his initials next to the “yes” response Detective Flood had written alongside each question on the form, and by signing at the bottom of the form. Moreover, at the beginning of the first video statement the defendant made later that day, he verbally acknowledged that before making his written statement, Detective Flood had read him his Miranda rights, that he had understood them and initialed each “yes” response, and that he had voluntarily made the written statement.
Between the defendant’s written and video statements on August 19th and his oral statement on August 21st, the defendant had the opportunity to use the bathroom and to sleep overnight. Concerning the defendant’s August 21st oral statement, Detective Flood testified that based on information obtained in an interview of a witness, the “felony DA” assigned that day wanted to take a third video statement from the defendant. For that purpose, the defendant was brought to the Bronx Homicide Task Force office at 1086 Simpson Street. According to Detective Flood, as he and Detective Ma-larky were removing the defendant from a holding cell to take him for the statement, the defendant saw a photograph Detective Flood had obtained of Pearce Cuthbert, the defendant’s eventual codefendant, in Detective Flood’s “front or rear pocket.” Recognizing Cuthbert, the defendant stated, as reflected in a contemporaneous note Detective Flood wrote on *329 the back of the photograph, “I guess you know I shot myself in the leg. I did not kill that man, Pearce did.” At that point, the defendant requested an attorney and no video interview with the Assistant District Attorney took place.
Based on Detective Flood’s testimony, the People claim that this statement was spontaneous and not the product of interrogation, and was thus admissible without the prior administration of Miranda warnings. Alternatively, they argue that, even if interrogation did occur, Miranda warnings did not have to be administered, since they had been read to the defendant three times before, and each time he had waived them. Pointing out that Detective Flood’s note on the back of the photograph begins, “U/S [undersigned] [and] Malarky attempted to speak with the suspect. Suspect was shown a single photograph of Pearce Cuthbert,” the defendant argues that the defendant’s statement was the product of custodial interrogation, and that because of the lapse in time since the last administration of Miranda warnings, their readministration was required before interrogation could begin.
Given that it is the People’s burden to prove voluntariness beyond a reasonable doubt, given Detective Flood’s contemporaneous notation that he and Detective Malarky were “attempt-ting] to speak” with the defendant, and that the defendant “was shown a single photograph of . . . Cuthbert” (emphasis added), and given the improbability that the defendant would have been able to inadvertently observe Cuthbert’s photograph in one of Detective Flood’s pockets, I do not credit Detective Flood’s testimony that the defendant’s statement was spontaneous, and find instead that it was the product of the “effective equivalent” of express interrogation. (Rhode Island v Innis, 446 US 291, 300-301 [1980]; see People v Ferro, 63 NY2d 316, 322-323 [1984] [following Innis in holding that the effective equivalent of express interrogation occurs when the police “should have known (that their words or actions) were reasonably likely to elicit an incriminating response” (internal quotation marks and citation omitted)].) Thus, the defendant’s statement is admissible only if the requirement of Miranda warnings was satisfied by those warnings that were unquestionably administered on August 19th.
Repetition of previously given Miranda warnings is not necessary “where there ha[s] been no break in custody and defendant’s statement [is] made within a reasonable time after his initial . . . waiver of Miranda rights.” (People v Irizarry, *330 199 AD2d 180, 181 [1st Dept 1993]; see People v Encarnacion, 259 AD2d 309, 310 [1st Dept 1999] [“Readministration of the Miranda warnings after a 6-hour interval was unnecessary, since defendant knowingly and intelligently waived those rights (initially) and had remained in continuous custody, in a non-coercive environment, during (the interval)” (internal quotation marks and citation omitted)]; People v Shomo, 235 AD2d 208, 208 [1st Dept 1997] [readministration of Miranda rights unnecessary where “defendant had knowingly and intelligently waived those rights five hours earlier and had remained in continuous custody, in a non-coercive environment, during that period”]; People v Glinsman, 107 AD2d 710, 710 [2d Dept 1985] [“It is well settled that where a person in police custody has been issued Miranda warnings and voluntarily and intelligently waives those rights, it is not necessary to repeat the warnings prior to subsequent questioning within a reasonable time thereafter, so long as the custody has remained continuous”].) Here, of course, there was no break in custody, and no evidence at the hearing, and no assertion by the defendant, that the environment was in any way coercive. The question remains whether, nonetheless, the time between the defendant’s last Miranda waiver and his oral statement, 31 hours and 50 minutes, was “reasonable.”
In People v Zappulla (282 AD2d 696, 698 [2d Dept 2001]), the Second Department found a period of 24 hours between a defendant’s two statements to be unreasonable, but there the Court held that “under the circumstances of this case,” that gap was unreasonable because the
“defendant spent much of March 17, 1998, at the hospital being treated for injuries sustained in a car accident on the way to central booking and therefore, was not in a continuous custodial environment. Moreover, the second interrogation concerned a crime unrelated to that for which he was initially arrested.”
In this case, unlike in Zappulla, there was no break in custody, the interrogation concerned the same crime about which he had been previously questioned, and Miranda warnings were previously administered not once or twice, but three times.
While there appear to be no cases on point in the First Department, the Second Department has twice found a delay of 25 hours to be reasonable. In People v Petronio (34 AD3d *331 602, 604 [2d Dept 2006]), “during his continuous and uninterrupted detention, the defendant waived his Miranda rights and confessed to killing the victim. The defendant then proceeded over the ensuing hours to spin a series of differing tales describing the manner of the killing and disposal of the body.” Noting that, “[djuring that time, the police obtained a search warrant to search the defendant’s home and investigated the defendant’s varied assertions,” and that “[t]he defendant was provided with food and the opportunity to use toilet facilities, as well as opportunities to rest in solitude,” the Court held that “the passage of a total of 25 hours from the time the police administered Miranda warnings to the time of the defendant’s final statement was not unreasonable.” (Id. ) Similarly, in People v Gega (74 AD3d 1229, 1231 [2d Dept 2010]), the Court found, without describing the testimony before the hearing court, that “[t]he record supports the Supreme Court’s determination that, under the circumstances here, the defendant’s statements, made 25 hours after last receiving his Miranda warnings, were not involuntary.”
The defendant argues that Petronio is distinguishable because the defendant “had last been questioned nearly a day and a half prior to his [allegedly] involuntary statement, and was not continuously speaking about his actions during that 31 hour interval.” There is, however, no indication in Petronio that the defendant was “continuously speaking” during his detention, but only that he was in “continuous and uninterrupted detention” over that period, during which he had “sp[u]n a series of differing tales.” (Petronio, 34 AD3d at 604.) Indeed, had he been interrogated continuously over 25 hours, statements he made toward the end of that period would be subject to suppression simply because of the length of the interrogation. (See People v Guilford, 21 NY3d 205 [2013]; People v Anderson, 42 NY2d 35 [1977].)
Moreover, here, as in Petronio, during the period of the defendant’s detention, the defendant was provided with food, given the opportunity to use the bathroom, and left alone in a cell overnight where he had the “opportunit[y] to rest in solitude.” (Petronio, 34 AD3d at 604.) And here, as in Petronio, the Detectives during the period the defendant was detained took other investigative steps, looking for possible witnesses and interviewing at least one of them on August 20th. After that witness informed Detective Flood that “she had knowledge firsthand from Mr. White and Mr. Cuthbert as to the *332 events with respect to Mr. Clayton Wright’s death,” the District Attorney’s Office authorized the defendant’s arrest, and, at the request of the Assistant District Attorney then on duty, he was brought to the Homicide Task Force for the possibility of taking a third video statement.
Relying on People v Baker (208 AD2d 758 [2d Dept 1994]), and People v Peres (32 Misc 3d 1213[A], 2011 NY Slip Op 51271[U] [Sullivan County Ct 2011]), the defendant argues that a fourth set of Miranda warnings were required in this case because the defendant was questioned in two different interview rooms in the Precinct on August 19th, was placed in a holding cell part of the time he remained in the Precinct, and was moved from the Precinct to the Bronx Homicide Task Force office on August 21st, where he made his oral statement. In Baker (208 AD2d at 758), the Second Department held that because “the record indicate [d] that the defendant remained in the interview room during his detention, and that approximately eight hours passed from the time he was issued Miranda rights and his 9:10 P.M. statement,” additional warnings were unnecessary. In Peres (2011 NY Slip Op 51271[U], *4), the court held that readministration of Miranda warnings was not required, noting that from the time when they were originally administered, more than IIV2 hours earlier, “although the officers conducting the interrogation may have changed faces, the defendant nevertheless remained in the same police department and all custodial interrogation took place in the same interrogation room.”
While in Baker the defendant remained in the same interview room throughout his detention, the Second Department did not hold in that case that readministration of Miranda warnings is required whenever a defendant is moved elsewhere at any point during his detention. Indeed, in Peres (2011 NY Slip Op 51271 [U], *2), the court noted that, unlike in Baker, the defendant was moved from the interrogation room to a holding cell over the course of his detention, and that “in the holding cell interrogation ceased and the defendant was given food and access to a bathroom.” Moreover, neither Baker nor Peres, nor any other case cited by the defendant or found by this court, holds that readministration of Miranda warnings is required whenever the defendant is questioned in a room other than the one in which the Miranda warnings were originally administered. Nor does any case hold that readministration is required whenever the defendant is moved from one police station to another.
*333 The defendant points to People v Chapple (38 NY2d 112, 115 [1975]), in which the Court of Appeals held that after a custodial statement has been impermissibly taken prior to the administration of Miranda warnings, a statement taken later, after the Miranda warnings have been given, is also inadmissible “unless there is such a definite, pronounced break in the interrogation that the defendant may be said to have returned, in effect, to the status of one who is not under the influence of questioning.” (See also People v Paulman, 5 NY3d 122 [2005].) Attempting to analogize from Chappie, the defendant creatively argues that the lapse in time between the last of the three Miranda warnings and the defendant’s movement from the Precinct to the Homicide Task Force office constituted such a “definite, pronounced break” between the warnings and the defendant’s oral statement, and thus required that the warnings be given for a fourth time.
The situation at issue in Chappie is not, however, analogous to the one here. Chappie and its progeny deal with the issue as to whether, despite the later administration of Miranda warnings, the defendant remains “under the influence” of the improper questioning that occurred before warnings were administered. Here, of course, there had been no impropriety before the defendant’s oral statement, and the question is whether after entirely proper post-Miranda questioning, statements made following a “definite, pronounced break” in questioning are no longer “under the influence of” the defendant’s previous Miranda waiver. No court—even the Second Department in Petronio and Gega, which each approved an interval of 25 hours between the Miranda warnings and the defendant’s statement—has held that such a lengthy break, in and of itself, requires the readministration of Miranda warnings. Instead, courts have considered only whether the defendant knowingly and intelligently waived those rights initially and remained in continuous custody, in a noncoercive environment, during the interval. (See e.g. Encarnacion, 259 AD2d at 310; Shomo, 235 AD2d at 208.)
In People v Johnson (49 AD2d 663, 665 [3d Dept 1975], affd on other grounds 40 NY2d 882 [1976]), the Third Department found that it was “not reasonable or likely that within eight hours of the third [Miranda] warning in two days the defendant had forgotten or no longer understood his constitutional rights.” (See also People v Service, 126 AD3d 638, 638 [1st Dept 2015] [where defendant had waived his Miranda rights ap *334 proximately seven hours earlier, “there was no reason to believe that defendant had forgotten or no longer understood his constitutional rights” (internal quotation marks and citation omitted)].) While, in this case, the lapse in time since the last of the Miranda waivers was longer than in Johnson and Service, and even in Gega and Petronio, it is no more reasonable or likely that the defendant had forgotten or no longer understood his constitutional rights. This is particularly so given that, before the defendant made his second video statement, when the Assistant District Attorney told the defendant that, although the defendant had been given the warnings twice already, he wanted to read them to the defendant again, the defendant responded, “I understand them. Do you have to read them?” That the defendant was still aware of his Miranda rights on August 21st is further evident from the fact that, after making his oral statement, he immediately requested an attorney.
In sum, I find that the People have established, beyond a reasonable doubt, that before the defendant’s written and two video statements on August 19, 2014, the defendant was properly instructed about and knowingly, intelligently and voluntarily waived his Miranda rights, and that it was not necessary for Detective Flood to administer Miranda warnings for a fourth time before the defendant’s August 21st statement. I further find that he made all four statements freely and voluntarily, without coercion of any kind, and without being promised anything in return.

 A Huntley/Dunaway hearing had also been ordered for the codefendant, Pearce Cuthbert, and that hearing began jointly with the defendant’s hearing, on May 30th, and continued on May 31st, but Cuthbert waived completion of the hearing and pleaded guilty on June 13th.