People v Vinson (2021 NY Slip Op 06378)





People v Vinson


2021 NY Slip Op 06378


Decided on November 17, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 17, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

CHERYL E. CHAMBERS, J.P.
FRANCESCA E. CONNOLLY
JOSEPH A. ZAYAS
DEBORAH A. DOWLING, JJ.


2006-04095
 (Ind. No. 119/04)

[*1]The People of the State of New York, respondent,
v
Dawan Vinson, appellant.


Edelstein & Grossman, New York, NY (Jonathan I. Edelstein and Robert M. Grossman of counsel), for appellant.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove and Solomon Neubort of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Kings County (Plummer E. Lott, J.), rendered April 6, 2006, convicting him of murder in the second degree (two counts), upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress his statements to law enforcement officials.
ORDERED that the judgment is affirmed.
In fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]; People v Danielson, 9 NY3d 342), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383). Upon reviewing the record here, we are satisfied that the verdicts of guilt were not against the weight of the evidence (see People v Romero, 7 NY3d 633).
The Supreme Court properly denied that branch of the defendant's omnibus motion which was to suppress his statements to law enforcement officials after he was advised of his Miranda rights (see Miranda v Arizona, 384 US 436). "If the individual indicates in any manner, at any time prior to or during questioning, that he [or she] wishes to remain silent, the interrogation must cease" (Miranda v Arizona, 384 US at 473-474). Once invoked, the right to remain silent must be "scrupulously honored" (id. at 479). "'It is well settled, however, that, in order to terminate questioning, the assertion by a defendant of his [or her] right to remain silent must be unequivocal and unqualified'" (People v Richardson, 195 AD3d 949, quoting People v Morton, 231 AD2d 927, 928). In the event that a suspect unequivocally invokes his or her right to remain silent, interrogation must cease and the suspect "may not within a short period thereafter and without a fresh set of warnings be importuned to speak about the same suspected crime" (People v Ferro, 63 NY2d 316, 322; see People v Hernandez, 67 AD3d 703).
Here, the evidence adduced at the suppression hearing established that the defendant, after being taken into custody in North Carolina on unrelated matters and read Miranda warnings, waived his Miranda rights and thereafter did not unequivocally assert his right to remain silent (see [*2]People v Richardson, 195 AD3d 949; People v Wisdom, 164 AD3d 928, 929). The defendant also did not unequivocally assert his right to remain silent while in police custody during his transport from North Carolina to New York. Moreover, under the totality of the circumstances, it was not necessary for law enforcement to repeat the Miranda warnings prior to questioning the defendant during transport (see People v Petronio, 34 AD3d 602, 604). Where, as here, "a person in police custody was issued Miranda warnings and waived those rights voluntarily and intelligently, 'it is not necessary to repeat the warnings prior to subsequent questioning within a reasonable time thereafter, so long as the custody has remained continuous'" (id. at 604, quoting People v Glinsman, 107 AD2d 710, 710). The defendant's videotaped statements made after he arrived in New York, each taken by different interviewers after the readministration of Miranda warnings, were also admissible (see People v Rodriguez, 77 AD3d 975; cf. People v Celleri, 29 AD3d 707). Contrary to the defendant's contention, suppression of his videotaped statements was not required under the "continuous chain of events" theory (People v Chapple, 38 NY2d 112, 114; People v Bethea, 67 NY2d 364, 367-368).
The Supreme Court properly denied the defendant's request to admit a so-called "affidavit of indigency," which the defendant allegedly executed in North Carolina in connection with an extradition proceeding, into evidence at trial. "[A] cross-examiner may not contradict a witness's answers concerning collateral matters by producing extrinsic evidence (such as documents or other witnesses), for the sole purpose of impeaching the witness's credibility" (People v Rollins, 184 AD2d 796, 797; see People v Patterson, 194 AD2d 570). The defendant improperly sought to use the affidavit of indigency to impeach a police witness on the issue of whether the defendant had made an unequivocal request for counsel while being questioned in North Carolina regarding the instant crimes. Whether the defendant requested counsel in connection with the extradition proceeding is a collateral matter (see People v Patterson, 194 AD2d 570), and does not otherwise contradict the witness's testimony with respect to whether the defendant requested counsel in connection with the instant crimes.
The evidence, the law, and the circumstances of this case, viewed in totality and as of the time of the representation, reveal that trial counsel provided the defendant with meaningful representation (see People v Benevento, 91 NY2d 708, 712; People v Baldi, 54 NY2d 137, 147). Contrary to the defendant's contention, the failure of trial counsel to question a certain police witness at the suppression hearing regarding alleged discrepancies between the witness's testimony at the suppression hearing and his testimony before the grand jury did not deprive the defendant of the effective assistance of counsel. Trial counsel used the grand jury testimony to impeach the credibility of the police witness at trial, and any error was not otherwise so egregious and prejudicial to have compromised the defendant's right to a fair trial (see People v Caban, 5 NY3d at 152; People v Rodriguez, 77 AD3d 975). Additionally, trial counsel was not ineffective for failing to request a charge that the jury should find the defendant not guilty if it found that the killings were not done in furtherance of the alleged commonly planned robbery but rather in furtherance of the private motive of his codefendant, who was tried separately. "[T]here can be no denial of effective assistance of trial counsel arising from counsel's failure to 'make a motion or argument that has little or no chance of success'" (People v Caban, 5 NY3d 143, 152, quoting People v Stultz, 2 NY3d 277, 287). Such a charge was not warranted under the circumstances of this case as the alleged private motive was relevant to only one of the two victims, and therefore trial counsel was not ineffective in failing to request it (see People v Caban, 5 NY3d at 152).
The sentence imposed was not excessive (People v Suitte, 90 AD2d 80).
The defendant's remaining contentions are without merit.
CHAMBERS, J.P., CONNOLLY, ZAYAS and DOWLING, JJ., concur.
ENTER:
Maria T. Fasulo
Acting Clerk of the Court